# Wytheville.

## LAGORIO AND OTHERS V. DOZIER.

### JUNE 13, 1895.

1. DEED OF EXCHANGE—*Omission of Name of one grantee.*—Where a deed of exchange of land is made between two or more persons, and  he name of the grantee of one of the parcels of land is omitted, the omission may be supplied and effect given to the deed, if, on inspection of the deed, enough shall appear to show in whom the title to that parcel vested.  The deed should be so construed as to give effect to the true intent of the parties, as expressed in the deed, considered in all its parts, and construing the language used according to its common and usual acceptation.

2. DEED OF EXCHANGE—*Omission of Name of one grantee—Case at Bar—Reformation.*—In a deed of exchange of land, husband and wife are described as "parties of the second part"; it is declared that *they* are seized of the land conveyed to the party of the first part; that the parties of the first and second parts being seized of their respective lots desire to exchange them, the one for the other, and the usual covenants of title are inserted.  Apt words of conveyance are used and the party of the first part is named as grantee of one parcel of the land, but no grantee is named of the other parcel.

HELD :

There is no ambiguity in the deed, and it alone can be looked to, in a court of law, as expressing the intention of the parties, and, looking to the deed alone, the husband and wife should be considered as grantees of the other parcel.  If by mutual mistake the deed fails to express the intention of the parties theret  , the remedy is by bill in equity to reform the deed.

3. ADVERSE POSSESSION—*Tenants in Common.*—The possession of one tenement in common, though exclusive, does not amount to a disseisin of the co-tenant,· nor does the receipt of profits and the payment of

taxes amount to an ouster of such co-tenant. A silent possession, unaccompanied by acts amounting to an ouster, or giving notice of an adverse claim, cannot be construed into adverse possession.

Argued at Richmond.    Decided at Wytheville.

Error to a judgment of the Corporation Court of the city of Norfolk, rendered October 31, 1893, in an action of ejectment wherein the defendant in error was the plaintiff, and the plaintiffs in error were the defendants.

*Affirmed.*

The plaintiff, in order to maintain the issue on his part, introduced in evidence the deed copied in the opinion, and the following agreed statement of facts: "The counsel on either side agree to the following state of facts: That Mahala H. Dozier, *nee* Jarvis, was divorced from her first husband, Wilson F. Dozier, in the year 1855; that the care and custody of their son, Appollos, the plaintiff in this case, was given by the decree of divorce to the father, who henceforth lived in Princess Anne county; that Mahala H. Dozier, *nee* Jarvis, shortly afterwards—about June 24, 1857—married Clement Hill, of Norfolk, and resided in that city with him until her death, which occurred during the war; that she left no will; that she saw her son, the plaintiff, but once after her divorce from his father, and that was when he, at the age of six years, called on her in Norfolk; she then declined to allow him to enter the house until she had obtained the consent of her husband, Clement Hill, who was opposed to all intercourse between the two; that Wilson F. Dozier, the father of the plaintiff, died in the Confederate army, near Richmond, in 1862; that after the death of his father the plaintiff was taken care of by his grandfather on his father's side, Daniel

Dozier, who resided in Princess Anne county, that he, the plaintiff, attained his majority on the 30th day of April, in the year 1872; that he continued to live in Princess Anne county until December, 1874, when he came to Norfolk; that his condition in life has always been an humble one, having been a car driver, and for the past few years a substitute patrolman on the police force of Norfolk and his education has been neglected; that he did not know Clement Hill by sight, nor did he hear of anything in regard to his mother after his visit to her when a boy until 1881, when he was informed of her death; that the first intimation that he received of any right to the land in controversy was in the fall of 1891, when he heard that a tract, including the land in controversy, was conveyed in fee-simple to Clement Hill and Mahala H., his wife, by Robert Rhea, by deed dated August 31, 1860; that they, Clement Hill and Mahala Hill united shortly afterwards in conveying a half of the tract to George Newton; that after Mahala Hill's death Clement Hill conveyed a portion of the remaining half to A. Lagorio, in March, 1878, and the residue to the same person in August, 1881, reciting in said deeds of conveyance that it was 'part of the same property conveyed by Robert Rhea to Clement Hill by deed dated August 31, 1860;' that Clement Hill was in actual, open, continuous, exclusive, and notorious possession of the land from the time of Mahala's death until he conveyed it to A. Lagorio; that during that time he received the profits and paid the taxes; that A. Lagorio, and, those claiming under him, have been in actual, open, continuous, exclusive, and notorious possession of the land from that time until the present. It is further agreed that either party may introduce any documentary evidence that may be adjudged competent in this controversy, and that the action shall be submitted to the court without a jury; that the plaintiff would

testify that he had no knowledge or notice of acts done in regard to the property in controversy until the fall of 1891.

> LOYALL & TAYLOR,
> Attorneys for Plaintiff.
> WALKE & OLD,
> For Lagorio's Devisees.
> WHITE & GARNETT,
> For Hill's Estate.

The defendants to maintain the issue on their part introduced in evidence a deed from Wilson Capps & wife, dated August 12, 1854, by which the grantors conveyed to Clement Hill a certain lot or piece of land in the city of Norfolk, by metes and bounds; a deed from Mary Browne of the one part, and Clement Hill and Mahala his wife of the other part, by which the said Mary Browne granted unto the said Clement Hill a certain lot or parcel of land situate in the city of Norfolk on the corner of Church and Moseley streets, "to have and to hold the said piece, parcel, or lot of land to the said Clement Hill, his heirs or assigns forever," in exchange for certain land which the said Clement Hill and Mahala, his wife, by the same deed conveyed to the said Mary Browne; a deed from Clement Hill and Mahala H., his wife, to George Newton, dated September 28, 1860, conveying to the said Newton with general warranty a parcel of land on the west side of Chapel street, in the city of Norfolk, by general description, and which is described as "the same piece or parcel of land which was sold to said Clement Hill by Robert Rhea;" a deed from Clement Hill and Mahala J., his wife, dated March 18, 1878, by which the grantors convey to Agostino Lagorio, with general warranty, a lot or parcel of land situate in the city of Norfolk which is described as "beginning on the western boundary of Chapel street, at a point twenty-one feet from the southwest corner of Chapel and

Falkland streets," and with other general description, and declaring in the said deed that it is "a part of the property which was conveyed to the said Hill by Robert Ray, deceased, by deed dated August 31, 1860," &c.; a deed from said Clement Hill and Martha J., his wife, to the same grantee, Agostino Lagorio a certain lot or parcel of land "situated at the southwest intersection of Falkland and Chapel streets, in the city of Norfolk, and bounded as follows:" * * * This deed described the property as "being a part of the property which was conveyed to the said Clement Hill by Robert Ray, by deed dated August 31, 1860"—this deed contains a covenant of general warranty, and the usual covenants of title and for quiet possession and against encumbrances; the will of Agostino Lagorio, admitted to probate in the Corporation Court of the city of Norfolk, May 7, 1889, which is in the following words and figures:

"I, Agustine Lagorio, of the city of Norfolk and State of Virginia, being of sound mind and memory, do make this my last will and testament:

"I give, devise, and bequeath all of my estate of every description, both real and personal, possessed by me at the time of my death, unto Mary Lagorio, my beloved wife, during her natural life for the support and maintenance of her and my following named children: Virginia, Mary, Angelina, Augustin', and Cecelia Lagorio, or such children as may be living at my death; and upon the death of my wife, I desire that all my real estate in the city of Norfolk shall be held jointly by my said children as long as they live, and that the income shall be divided equally amongst them, share and share alike.

"But if the aforesaid children marry and have issue, then the property is to be equally divided amongst them, but not until the death of my children. If my children die childless,

Argument.

then the last two living can dispose of what property remains as they think best.

"It is my will and desire that my said wife shall have the entire control and management of my whole estate, as to her may seem most conducive to the interest of herself and our children.

"I also authorize and empower my said wife, as executrix, to sell and dispose of all my real estate situated in Norfolk county, State of Virginia, and, also, all my interest in real estate situated in the State of Michigan, and to divide the profits thereof equally among my children.

"Lastly, I do hereby nominate and appoint my said wife, Mary Lagorio, executrix of this, my last will and testament, and request that she may be permitted to qualify as such without security.

" In witness whereof I hereunto subscribe my name, and affix my seal this 2d day of April, in the year eighteen hundred and eighty-seven."

The will of Clement Hill, admitted to record in the Corporation Court of the city of Norfolk, January 14, 1890, by which he devised and bequeathed to his wife, Martha J., all of his estate, real, personal and mixed (except $100 given to his son, George W.) for life, with remainder to his three daughters in equal shares.

*White & Garnett*, for Hill's devisees.

*Walke & Old*, for the plaintiffs in error, contended:

That the court could not supply the names of Hill and wife as the *grantees* from Rhea in the deed, unless it was the *plain* intention, to be ascertained from the purpose of the deed itself that their names should be supplied.    3 Preston Abstract of Title, (27) 25, (Ed. 1828); *Bustard* v. *Coulter*, Cro. Eliz. 903; Prest. Shep. Touch. 65; *Eccles* v. *Lambert*, Mays

R. 38; *Spive* v. *Topham*, 3 East, 115; 2 Thomas' Coke, (Ed. 1836), (243), 198, n. 27.

In these cases where the name of the grantee appeared in the *habendum*, it was sufficient to show the intention, and that seems to be as far as the courts had gone.   In *Spive* v. *Topham* the grant was by mistake to C, *habendum* to B, but it was held a grant to B.

There was no *express* grant to Hill and wife, which negatived the intention that the deed should so operate, and all the subsequent conduct of Hill showed that he did not intend that the deed should so operate.   Hill took charge of the real estate conveyed in exchange, had it assessed in his name alone, collected the rents and paid the taxes, and he and those claiming under him exercised exclusive dominion over it for more than thirty years, about twenty-eight years after Mrs. Hill's death, and about twenty years after the appellee became of age; and within one month after the deed of exchange he and his wife conveyed by deed a part of the real estate conveyed to him in exchange to George Newton, in which it was recited that it was the *same* property that had been conveyed to *him* by Rhea; and in 1878 and 1881 he conveyed the remaining portion of the said real estate, and in all of said deeds he conveyed with general warranty.

That the deed being a deed of exchange between Hill and wife of the one part, and Rhea of the other part, there was a condition incident to it that if either party be evicted from any part of the land he received by reason of defect of the other's title, he might re-enter upon his own land and avoid the exchange *in toto*.   2 Min. Inst., (ed. 1877,) page 704. That therefore the titles of the two estates conveyed were dependent, the one upon the other; that the lot conveyed by Hill to Rhea was owned by Hill alone in fee, his wife having no interest in it except that of contingent right of dower, and she was joined in the deed of exchange for the purpose

only of barring that contingent right, and to preclude her from
electing, if she survived her husband, in which lot she might
claim dower.    2 Min. Inst., 128; 1 Lomax's Digest, (84), 101;
and that there was no intention to make the deed serve the
double purpose of effecting an exchange with Rhea and also a
settlement upon Mrs. Hill, especially as the husband and wife
were (at that time) deemed one person at law and neither could
make a conveyance directly to the other.    1 Min. Inst., (ed.
1876), 319.    And it was not shown that Mrs. Hill was in any
way entitled to such a settlement.    That the recital in the
deed, ''Whereas the said Clement Hill and Mahala H., his
wife, are seised of a certain lot,'' the same that was conveyed
to Rhea, did not operate as a conveyance of a moiety in said
lot to the said Mahala H., nor did it conclude Hill and those
claiming under him, because it did not state the character of
the *seisin;* that the word ''seisin'' applied to any estate of
*freehold* in contradistinction to that precarious kind of posses-
sion by which tenants in villenage held their lands.    1 Lomax
Digest, 5; 2 Min. Inst. (ed. 1877), 71, 1c.    That this recital
was false in fact, so far as it was claimed by the appellee that
Hill and wife were *seised in fee* by entireties or of equal estates
on the said lot; that Hill and those claiming under him were
not precluded from showing the *facts* of seisin by reason of
said recital.    2 Lomax Digest, (209), 279, sec. 5; 2 Smith's
Leading Cases, (ed. 1873), (580), 617, (620), 671, 675, 676;
*McCullough* v. *Dasheill,* 78 Va. 634, 640; *Bower* v. *McCor-
mick,* 23 Gratt. 310, 321, 328; 20 Am. & Eng. Ency. Law,
620, title ''Recitals.''

  That in this case the word ''*seised*'' might import that the
husband was seised of one estate of freehold and the wife of
another, as for instance that the husband was seised of an
estate for life and the wife of another estate in fee, or that
they were seised in fee in unequal proportions, as for instance
that the husband was seised of one-fifth and the wife of four-

fifths, and so on by permutation the word may apply to innumerable estates. This made it necessary to look into the facts of seisin to ascertain what the parties meant by that word, and when these facts were ascertained, that Hill alone owned the fee in the lot, and his wife had a contingent right of dower, the recital meant only to express this ownership as all that was necessary to convey to Rhea an indefeasible, perfect title; and the court in *filling* the blank in the deed would no more insert, under these circumstances, the name of Hill and wife so as to convey to the man estate in fee by entireties, than it would insert their names if it had been shown that the wife owned the fee in the lot, and the husband was only tenant by the curtesy initiate. That a mere recital in a deed did not create an estate, *Wisely* v. *Findlay*, 3 Rand. 361; that this recital was not called in question as between Hill and wife on the one hand and Rhea on the other, so as to operate as an estoppel, but it was as to its effect between Hill and wife or those claiming under them respectively, and to give it the effect claimed by the appellee, was to make it operate as a conveyance whereby Hill conveyed to his wife one-half of the estate in the lot which was conveyed to Rhea in exchange, so as to make the grant from Rhea operate as a grant to Hill and wife by entireties in fee; and that parol testimony was admissible to show the facts of the seisin in the lot conveyed to Rhea. 2 Min. Inst., (1877), 949, 955-6; 2 Lomax Digest, (196), § 27; *Crawford* v. *Jarrett*, 2 Leigh, 630; *Beery* v. *Homan*, 8 Gratt. 48; *Luster* v. *Middlecoff*, Ibid, 54; 1 Am. & Eng. Law, 528, note, quoting 2 Phil. on Ev. (10th ed.) 389. That the rule "*ut res magis valeat quam pereat*" had no place in this controversy, because there was and had been no dispute between Hill and those claiming under him on the other hand, and Rhea or those claiming under him on the other, as to the effect of the deed; and besides it was not necessary to supply the name of Hill and wife to make the

deed effectual—the name of Hill alone would do that.   That Hill and those claiming under him had always, since 1860, been in actual, open, continuous, exclusive, and notorious possession of the land; he had it assessed to himself immediately upon receiving a deed from Rhea, paid taxes on it and collected the revenues.   His wife died about 1864, the appellee became of age in 1872, the suit was brought in 1892, the appellee lived in Norfolk from December, 1874, to the time the suit was brought, but did not know even of his mother's death till 1881, although she lived and died in Norfolk.   That Hill's dominion over the property was exclusive and adverse to the world.   He never supposed that the deed was other than he intended it to be, that is, a deed to himself, and his conduct was that of every owner of property, not supposing there was any question about his title, for he never intended there should be any.   From the beginning he manifested his construction of the conveyance, and in 1860, shortly after the deed of exchange, conveyed a part of the property to Newton, and afterwards the balance of it to Lagorio, always conveying with general warranty.   If any ouster was necessary in such a case, it would be presumed in this. *Parker* v. *Locks & Canals*, 3 Met. 91; Buswell on Lim. and Adverse Possession, § 302.

*Loyall & Taylor*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

This is a writ of error to a judgment of the Corporation Court of the city of Norfolk, rendered in an action of ejectment.   The record discloses the following facts:

On the 31st of August, in the year 1860, a deed was entered into between Robert Rhea, of the one part, and Clement Hill and Mahala Hill, his wife, of the city of Norfolk, of the other part.   The deed is as follows:

"This deed made this thirty-first day of August, in the year eighteen hundred and sixty, between Robert Rhea, of the city of Norfolk, on the one part, and Clement Hill and Mahala H., his wife, of the city of Norfolk, of the other part.

"Whereas, the said Robert Rhea is seised of a certain lot of land, lying and being situate in the city of Norfolk on the corner of Chapel and Falkland streets, and bounded as follows: Beginning at a point three feet from the line of the lot of the said Robert Rhea, now occupied by Mrs. Jane Ashley, and running on a line parallel to and three feet distant from the line of the said lot now occupied by the said Ashley (for the purpose and so as to leave a three-foot lane between the lot now conveyed and the said remaining lot of Robert Rhea), to the line of the lot of James E. Barry; thence eastwardly along the line of the lot of the said Barry to Chapel street; thence along the line of Chapel street to its intersection with the line of Falkland street; thence along the line of Falkland street to the place of beginning. And whereas, the said Clement Hill and Mahala H., his wife, are seised of a certain lot in the city of Norfolk, lying and being on the corner of Church and Moseley streets, bounded as follows: Beginning at the line of Benjamin Hill at its intersection with Church street, and running along the line of the lot of the said Benj. Hill one hundred and nine feet to the line of the lot of Mary Brown; thence along the line of the lot of Mary Brown, thirty feet to Moseley street; thence along the line of Moseley street, to the intersection with Church street; thence along Church street to the place of beginning. And whereas, the said parties of the first and second parts are desirous of exchanging their said lots, the one for the other, and upon the terms and for the considerations hereinafter expressed; now this deed witnesseth:

"That the said Robert Rhea, for and in consideration of the premises and the grants and covenants hereinafter mentioned,

doth grant, with general warranty, all that lot of land lying and being in the city of Norfolk, on the corner of Chapel and Falkland streets, as hereinbefore described, with the appurtenances, reserving to him, the said Rhea, the three-foot lane next his said lot, now occupied by Mrs. Jane Ashley. And this deed further witnesseth that the said Clement Hill and Mahala H., his wife, for and in consideration of the premises and grant and covenants herein contained, and the sum of seven hundred dollars to them in hand paid, at or before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, doth grant, with general warranty, unto the said Robert Rhea, all that lot of land with the appurtenance thereto belonging, lying and being in the city of Norfolk, on the corner of Church and Moseley streets, and bounded by the lots of Benjamin Hill and Mary Brown, hereinbefore described.

"And the said parties of the first and second parts do mutually covenant and agree that they have good right to make conveyance of the lots of land hereby conveyed to each other; that they have done no acts to encumber the said lots; that they shall have respectively quiet possession of said lots, free from all encumbrances; and that they will mutually execute such further assurances of the said land as may be requisite.

Witness the following signatures and seals.

ROBERT RHEA.        [Seal.]
CLEMENT HILL.       [Seal.]
MAHALA H. HILL. ·[Seal.]"

This deed fulfills all the essential conditions of a deed of exchange. The only peculiarity about it, and the one out of which this controversy arises, is that it wholly omits to name any grantee from Robert Rhea of the lot or parcel of land conveyed by him; but we apprehend that this omission may be supplied and full effect may be given to the instrument, if,

upon an inspection of the deed, enough shall appear to enable
the court to say in whom the title to the lot vested. It is
a familiar principle that courts will so construe the contracts
of parties *ut res valeat magis quam pereat.* Applying this
rule, and remembering always that it is the duty of courts to
give effect to the true intent of the parties, ascertained, not
by straining the signification of words so as to reach what to
the court may appear a more rational or more equitable con-
struction than that to be deduced from the language actually
employed, but by construing the language used in accordance
with its common and usual acceptation, and searching the
entire writirg in which the parties have seen fit to set out
their agreement. Confining our view to the deed itself, we
find that it declares that Clement Hill and Mahala, his wife,
*are seised,* that is to say, possessed, of a freehold in a lot of
land, describing their interest therein in the precise terms em-
ployed to describe the interest of Robert Rhea in the lot con-
veyed by him. Robert Rhea is named as "party of the first
part." Clement Hill and Mahala, his wife, are named
as "of the other part." The lots owned by them are de-
scribed, and the instrument states that the parties of the
first and second parts, being seised of their respective lots,
desire to exchange them, the one for the other; Robert Rhea,
paying in addition $700 in cash to Clement Hill. Apt words
to convey the lots are employed, and the usual covenants are
introduced; the only thing unusual about the paper being, as
before observed, the omission of the names of the grantees
from Rhea. This being a deed of exchange the party who
granted to Rhea must of necessity be his grantee. The deed
describes Clement Hill and Mahala, his wife, as the party "of
the other part" (not the one more than the other) and unless
some rule or principle of law, or of construction, can be shown,
which, under such circumstances, requires the exclusion of

Opinion.

Mahala, we can see no reason, in the nature of things, why her name should not be introduced as well as his.

They are declared to be seised of the lot which they conveyed to Rhea; they (the two together) and not either one of them, by the express terms of the deed, are the parties "of the other part," and it is with them, as such parties and not with either of them individually, that the party of the first part contracts; and finally "the said parties of the first and second parts do mutually covenant and agree that they have good right to make conveyance of the lots of land hereby conveyed to each other; that they have done no acts to encumber the said lots; that they shall have respectively quiet possession of said lots, free from all incumbrances, and that they will mutually execute such further assurances of the said land as may be requisite." It is to them unitedly and not to either of them individually, that Rhea must be held, under the terms of this deed, to have conveyed the lot. Does this result violate any rule or policy of the law? Is it a thing unheard of that a man should thus make provision for his wife?

May not the relinquishment of her dower interest in the more valuable parcel of land have furnished the consideration for the interest thus vested in her by this deed? If this be the legitimate construction to place upon this deed we have nothing to do but so to decide. But the idea seems to be entertained that this view does not reflect the intent of the parties, because it is alleged the whole consideration moved from Clement Hill. In the first place, there is nothing to show that such an intention existed as that Clement Hill, and he alone, should be the grantee in fee. That assumption, if not wholly gratuitous, rests for its sole support upon the deed from Capps to Hill set out in the record.

If the deed of August 31, 1860, as written does not accurately set forth the contract of the parties; if by mutual mis-

take it fails to contain that which the parties intended it should contain, then we apprehend that a bill in equity is the proper mode by which to seek reformation of the instrument. Certainly, a court of law is powerless to furnish any such relief. We cannot, in the construction of this deed, look outside of its contents. It is plain and unambiguous.

To seek elsewhere for its true construction, would be in effect to reform it. If, by consulting other papers filed in the record, the construction of this deed is to be controlled, then these papers are, in our judgment, inadmissible for any such purpose, for that would be, in effect, not to interpret this deed but to make a new one. Looking to this deed, and to this deed only, in order to ascertain the intention of the parties, there would seem to be no room for doubt that the names of both Clement Hill and Mahala, his wife, must be read into the deed, as grantees therein. This being the legal effect of the deed, it would seem to be clear that it vested the legal title jointly in them. If this be so, then any evidence showing or tending to show, that the consideration for the conveyance by Robert Rhea moved from Clement Hill only, and that, therefore, the conveyance must be construed as intended for his benefit only, would be, in effect, to set up a resulting trust in Clement Hill, and this, we apprehend, cannot be done in a court of law. If, therefore, we were permitted to look beyond the instrument for evidence to aid in its construction in a case in which the paper to be construed presented no ambiguity, the only effect of the evidence to which our attention has been invited, to-wit: the deed from Wilson Capps to Hill, dated the 6th of October, 1857—would be to show that the consideration for this exchange, consummated by the deed under consideration, moved from Clement Hill, and therefore created, or tended to create, a resulting trust in him.

But inasmuch as a court of law is incapable of dealing with

interests of this nature, it would avail the plaintiff nothing in this case.

Nor do we think that the deed of the 28th of September, 1860, from Clement Hill and his wife to George Newton, throws any light, by which we can be guided, upon the difficulty in this case. It is true that deed conveys a part of the land which was conveyed by Robert Rhea to Clement Hill by the deed under investigation, but there is nothing in the deed to Newton inconsistent with the construction placed upon the deed from Robert Rhea to Clement Hill and wife by the Corporation Court. The deed to Newton recites that "it is the same piece or parcel of land which was sold and conveyed to the said Clement Hill by Robert Rhea by deed of record in the clerk's office of the court of the corporation of the city of Norfolk." The fact being that it is not the same piece or parcel of land which was so sold and conveyed, but only a portion of it; and even though Clement Hill and Mahala Hill, his wife, had been jointly seised of the undivided tract, the most that could be made of this deed is that Clement Hill and Mahala Hill, being so jointly seised, conveyed a part thereof to George Newton, the effect of which would be, with respect to the residue not conveyed, that Mahala Hill would be entitled to so much thereof as would make her share equal to that of her co-tenant, he being charged in the partition (had such partition been made) with the portion thus sold.

We are of opinion, therefore, that this assignment of error is not well taken, and that the Corporation Court did not err in holding that under the deed of the 31st of August, 1860, Clement Hill and Mahala, his wife, took a joint estate in fee in the lot of land conveyed by Robert Rhea.

The agreed facts in the case show "that Clement Hill was in actual, open, continuous, exclusive, and notorious possession of the land from the time of Mahala's death until he conveyed it to A. Lagorio; that during that time he received the

profits and paid the taxes; that A. Lagorio and those claiming under him have been in actual, open, continuous, exclusive, and notorious possession of the land from that time until the present.'' It appears that Mahala Hill died in 1864; that the plaintiff in error attained his majority on the 30th of April, in the year 1872; and that the deed to A. Lagorio of the land in controversy was made in August, 1881. Upon the death of Mahala Hill, there having been no issue born to her marriage with Clement Hill, her interest in this land vested in her son, as her sole heir, and he became tenant in common with Clement Hill.

With respect to persons so situated, it is well settled that the possession of one, though exclusive, does not amount to a disseisin of the co-tenant. As was said by Judge Marshall in *McClung* v. *Ross*, 5 Wheaton, 116, ''A silent possession, unaccompanied by any acts which amount to an ouster, or giving notice to the co-tenant that his possession is adverse, cannot be construed into an adverse possession.''

It is held that the mere receipt of profits and the payment of taxes is not such an ouster. These principles seem to be thoroughly well established in this court. See *Rowe* v. *Bentley*, 29 Gratt. 760; *Purcell* v. *Wilson*, 4 Gratt. 16; *Hannon* v. *Hounihan*, 85 Va. 429; *Creekmur* v. *Creekmur*, 75 Va. 436.

We are therefore of opinion that the claim of adversary possession relied upon by the plaintiff in error, is not, under the circumstances of this case, sustained, and that the judgment complained of must be affirmed.

AFFIRMED.