## Richmond

EDWARD DEV. BUNN, ET AL. v. T. J. OFFUTT, ET AL.

March 5, 1976.

Record No. 750093.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Poff, JJ.

*Edward DeV. Bunn* (*Thomas W. Ullrich,* on brief), for appellants.

*Geoffrey T. Williams* (*Walter J. Newlon,* on brief), for appellees.

HARRISON, J., delivered the opinion of the court.

Edward DeV. Bunn and Sandra M. Bunn noted this appeal from a final decree of the lower court holding that they do not have an easement to go upon property owned or controlled by the appellees, T. J. Offutt, Temco, Inc. and Dittmar Co., Inc., and to use a swimming pool located thereon.

The evidence was heard *ore tenus* and the following appears from the statement of facts. On July 9, 1962, Temco, Inc. conveyed to Harvey W. Wynn and Rosabelle G. Wynn property known as 900 South Wakefield Street in Arlington. Prior thereto, on January 26, 1962, the Wynns had signed a contract of purchase prepared by the

seller's agent. In this contract is found the following provision: "Use of apartment swimming pool to be available to purchaser and his family." The Wynns testified that the agent, Willis L. Lawrence, told them that the use of the pool went with the ownership of the home being purchased, and that subsequent purchasers would have the right to use the pool.[1] The pool is located in an adjoining apartment complex which was being developed by appellees at the time. The Wynns said the sales agent emphasized that use of this pool would be a desirable feature in the event they subsequently decided to sell the property. No reference was made to the pool in the deed from Temco to the Wynns.

On May 31, 1969, the Bunns contracted in writing to buy the property from the Wynns through the latter's agent, Sonnett Realty Co., Inc. While no reference to the pool was made in the contract, the Wynns and a representative of Sonnett told the Bunns that the use of the pool went with the purchase of the property. However, the deed, dated July 18, 1969, conveying the property from the Wynns to the Bunns contains no reference to the pool. After the purchase was effected, and when the Bunns requested passes from appellees showing their entitlement to the use of the pool, their request was refused.[2]

Appellants attach significance to the close relationship which they allege existed between Offutt, Temco, Dittmar and Sonnett. The appellees all have their offices in the same room of a building situated on the property where the pool is located, and Sonnett, which in 1969 was the exclusive sales agency for the appellees, has its office in the same building. Furthermore, the Wynns had agreed to purchase another house, then under construction, from appellees provided Sonnett could sell their Wakefield home. The Bunns testified that as an inducement for them to increase by $750 their offering

---

[1] Lawrence was not called as a witness.

[2] The trial judge deleted from the statement of facts tendered him by counsel for appellants the following statements:

"Before the complainants went to settlement on the property they went to the defendants to get the passes which were issued by the defendants as a control to keep out persons who either did not own homes or live in the apartment houses. The complainants explained that they had contracted for the purchase of the Wynn property and settlement was in a few days. The defendants told the complainants that the passes could not be issued until settlement and to come back after settlement and they would be issued passes.

"As a result of the sale of the Wynn property to complainants, the defendants made a sale of one of its new homes, and a sales commission was earned by the salesman Robbins and broker Sonnett on the sale of two homes—the sale of the property to the complainants and the sale of the new home to the Wynns."

price for the Wynn property, Sonnett stressed the value of using the swimming pool, and represented that pool membership in a club elsewhere would cost them an initial $300 fee plus annual dues.

Representatives of Sonnett attempted to persuade the appellees to grant pool privileges to appellants, but without success. Ultimately, on November 14, 1969, Sonnett wrote Mr. Bunn a letter advising that it had been unable to secure from appellees passes for the swimming pool, and that since the situation was beyond its control, Sonnett "would be only too happy to assume your existing trust and give you the cash you have invested in the property". This offer was refused.

We agree with the trial judge that the rights of the parties depend upon the nature of the transaction in 1962 between appellees, as sellers, and Mr. and Mrs. Wynn, as purchasers.

The testimony of Offutt, owner of appellee corporations, is unequivocal that at no time did he ever intend to extend the privilege of using the swimming pool beyond the original purchasers of certain houses (including 900 South Wakefield Street) which were located adjacent to his apartment development. He said that at one time he thought he would experience difficulty in selling the houses without an added inducement, and therefore included in his sales contract a clause to the effect that the use of the apartment swimming pool would be available to the purchaser and his family. Offutt further testified he never intended the right to run with the land and inure to successors in interest and in fact had never extended pool privileges to any one beyond the first purchasers.

The dispositive issue in this case is whether the language in the contract, "Use of apartment swimming pool to be available to purchaser and his family", amounted to a grant of a mere license to the Wynns and their family; or whether the Wynns acquired thereby a private easement across the land of appellees to the swimming pool and to the use of the pool, which easement was thereafter transferred to the Bunns.

A license has been described as "a right, given by some competent authority to do an act which without such authority would be illegal, a tort, or a trespass". 12 M. J., License to Real Property, § 2, p. 148. A license is personal between the licensor and the licensee and cannot be assigned. *Hodgson* v. *Perkins, et als.*, 84 Va. 706, 5 S. E. 710 (1888). And a grant which creates any interest or estate in land is not a license. Such a grant creates an easement. *Buckles* v. *Kennedy C. Corp.*, 134 Va. 1, 114 S. E. 233 (1922).

An easement has been described as " 'a privilege without profit, which the owner of one tenement has a right to enjoy in respect of that tenement in or over the tenement of another person; by reason whereof the latter is obliged to suffer, or refrain from doing something on his own tenement to the advantage of the former' ". *Stevenson v. Wallace*, 27 Gratt. (68 Va.) 77, 87 (1876).

> "Easements correspond to the servitudes of the civil law, and consist (1) of privileges on the part of one person to use the land of another (the servient tract) in a particular manner and for a particular purpose, or (2) of rights to demand that the owner of the servient tract refrain from certain uses of his own land, the privileges or rights in either case not being inconsistent with a general property in the owner of the servient tract. The easement further involves the right of freedom in its exercise from interference by the owner of the servient tract or other persons. Examples of easements are rights of way, of drainage, or light and air, etc." [Footnotes omitted] 1 Minor on Real Property (2d Ed., Ribble), § 87.

Easements may be created by express grant or reservation, by implication, by estoppel or by prescription. The only rights acquired by the Wynns in the property of appellees were acquired by deed from Temco. The provisions of the contract were merged in this deed. However, the deed is silent as to the pool, and the contract made the use of the pool available only to "purchaser and his family". The trial court found this language consistent with appellees' theory that a mere license only was granted to the purchasers and their families, and not an interest in land or an estate of inheritance; that the absence of any provision regarding the swimming pool in the deed to the Wynns was sufficient to preclude any easement by grant or reservation; and that the evidence and exhibits failed to show that an easement was created by estoppel, necessity or prescription. The trial court further found that no easement had been created by implication for there was neither a showing of a preexisting use of the easement prior to the conveyance by Temco to the Wynns, nor any showing that the use of the swimming pool was essential to the beneficial enjoyment of the land conveyed.

In *Portsmouth Gas Co. v. Shebar*, 209 Va. 250, 258, 163 S. E. 2d 205, 211 (1968), quoting from 4 *Williston, Contracts* § 616, at 652 (3d ed. 1961), the court said:

" 'Where . . . the meaning of a writing is uncertain or ambiguous and parol evidence is introduced in aid of its interpretation, the question of its meaning should be left to the jury'."

The force and effect of a finding of fact by a trial court where the evidence is taken *ore tenus*, and where there is no transcript of the testimony of the witnesses, is particularly strong.

In *Hamlin* v. *Pandapas*, 197 Va. 659, 664, 90 S. E. 2d 829, 833 (1956), the court held:

"In the construction of language contained in a deed the grantor must generally be considered as having intended to convey all that the language he employed is capable of passing to the grantee, and where the description admits of two contructions, it will be construed most favorably to the grantee. . . ."

However, the deed from Temco to the Wynns did not purport to convey an easement to the swimming pool, and the language in the sales contract between the parties is not sufficient to create an express easement. The Wynns and their family were given a mere license to use the swimming pool. It was not an interest running with the land that could subsequently be transferred by them.

The decree of the lower court under review is

*Affirmed.*