# Rufus R. Brown

## v.

# Dayton A. Haley, et al.

Record No. 840346

April 24, 1987

Present: Carrico, C.J., Cochran,* Poff, Compton, Stephenson, Russell, and Thomas, JJ.

---

* Justice Cochran prepared and the Court adopted the opinion in this case prior to the effective date of his retirement on April 20, 1987.

*David A. Melesco (B. James Jefferson; Welch & Jefferson*, on brief), for appellant.
*John S. Edwards (Martin, Hopkins, Lemon & Carter, P.C.*, on brief), for appellees.

COCHRAN, J., delivered the opinion of the Court.

This appeal raises questions concerning *res judicata* and an implied easement to cross a certain strip of land for ingress and egress to and from Smith Mountain Lake.

By deed dated September 6, 1961, Rufus R. Brown and Sallie W. Brown conveyed to Appalachian Power Company (Apco) the right to overflow and affect with water that portion of a tract of 321.75 acres to the 800-foot elevation and to enter below the 800-foot contour and clear the land for the impoundment of water. The deed reserved to the Browns the right to use the land below the 800-foot contour, as follows:

Grantors shall have the right to possess and use said premises in any manner not inconsistent with the estate, rights and privileges herein granted to Appalachian, including (a) the right to cross said land to reach the impounded waters for recreational purposes and for obtaining their domestic water supply and water for their livestock and (b) the right to extend and maintain necessary fences across said land and into the impounded waters for a sufficient distance to prevent livestock from wading around said fences.

Moreover, the deed provided that the covenants and agreements contained therein "shall be covenants attaching to and running with said premises."

By deed dated October 19, 1964, the Browns conveyed to Dayton A. Haley and Lucy S. Haley a portion of the remaining land described by metes and bounds and containing 17.26 acres, together with an easement of right-of-way over other lands of the Browns for ingress and egress. This tract, as described, extended to the 800-foot elevation contour of Apco, the level to which it was expected the waters of Smith Mountain Lake, when filled, would extend.

The Haleys built a beach, piers, a campsite, and a trailer park for recreational use of the waters of Smith Mountain Lake. After being filled, however, the lake rose to a water level that generally remains within the 790-foot and 795-foot contours. As a consequence, the Haleys' tract, adjoining the 800-foot contour, is usually separated from the lake waters by a strip of land that varies in width, depending on the terrain and the volume of the water collected in the lake.

In 1978, the Browns brought an action at law against the Haleys for ejectment and damages. The trial court sat without a jury and the evidence was not transcribed. By final order entered July 23, 1979, the court found in favor of the Browns, ruling that they were entitled to recover "sole possession" of "all the land below the 800 foot contour as the [Haleys'] land borders upon Smith Mountain Lake," but denied the Browns' claim for damages.

In 1982, the Haleys and others[1] filed an amended motion for declaratory judgment and bill of complaint against Apco and against Rufus R. Brown, who, upon the death of Sallie W. Brown, had become vested with sole fee simple title to their land. Plaintiffs asked the court to declare that they had an easement to cross Brown's land below the 800-foot contour to reach the lake waters, to reform the 1964 deed from the Browns to the Haleys, to declare that the plaintiffs had riparian rights in the lake, and to enjoin Brown from further action or threats to impede their access to the lake.

The court sustained a demurrer of Apco to the easement claim and motions to dismiss the remaining claims with respect to Apco; no error was assigned to these rulings. Brown filed an answer in which he denied that plaintiffs were entitled to the relief sought and asserted that under the doctrine of *res judicata* the adjudication in the prior ejectment action barred the present litigation. Plaintiffs' claims against Brown proceeded to trial before a judge other than the one who had presided in the ejectment action.

By letter opinion of August 10, 1983, the trial court stated that, although the final order entered in the earlier action was ambiguous, the ejectment action decided only the fee simple ownership of the land below the 800-foot contour and established the boundary line between the Brown and Haley properties. Finding that the easement issue was not identical to the title issue previously resolved, the court was of opinion that the present proceeding was not barred by *res judicata*.

The court found that, at the time the Haleys purchased the tract from the Browns, the parties believed the lake waters would extend to the 800-foot contour, so that the Haleys thought that their land extended to the water's edge. In its letter opinion the court stated that it was "implied, if not express[ly] agreed to by the parties," that plaintiffs had a reasonable expectation of reaching the lake water. Because plaintiffs had made substantial improvements based on their belief that they could cross the strip of land in question, the court stated that to deny them the right to cross it "would not only be inequitable but also unconscionable." Accordingly, the court was of opinion that plaintiffs were entitled to an implied easement across the strip of land. After further ar-

---

[1] The other plaintiffs were Ira Lewis Cooper, Warren H. Slone, and Warner E. and Dorothy Smith, all tenants of Haley's Trailer Court, and William W. Hall, described as an invitee of Haley's Trailer Court and member of the general public.

gument by counsel upon Brown's motion for reconsideration, the court reaffirmed the opinions set forth in its letter of August 10, 1983.

By final order and decree entered December 7, 1983, the court overruled Brown's plea of *res judicata* and ruled that Dayton A. Haley and Lucy S. Haley, their heirs and assigns, have an implied easement to enter upon and cross Brown's land lying between the 800-foot contour line bordering the Haleys' property and the waters of Smith Mountain Lake as the waters rise and fall. The court also permanently enjoined Brown from taking or threatening any action to prevent the Haleys from exercising their right to enter and cross the strip of land.

In this appeal, Brown[2] reiterates his argument that *res judicata* bars the maintenance of this suit because of the prior ejectment action involving the parties or their privies.[3] Because his motion for judgment in the prior action alleged that the Haleys had "no interest" in the land below the 800-foot elevation contour, he contends that the existence of an easement over the disputed portion of the property was in issue and was decided adversely to the Haleys. Citing *Bates v. Devers*, 214 Va. 667, 202 S.E.2d 917 (1974), he asserts that *res judicata* bars relitigation of any part of the same cause of action which was or could have been previously litigated and therefore precludes further litigation of the easement issue.[4] We do not agree.

As Brown has noted, we said in *Bates* that a judgment in favor of a party "bars relitigation of the *same cause of action*, or any part thereof which could have been litigated, between the same parties and their privies." 214 Va. at 670-71, 202 S.E.2d at 920-21 (emphasis in original). But we explicated this language in a footnote:

The barring of a cause of action "which could have been litigated" is not directed to an unrelated claim which might per-

---

[2] Brown died after this appeal was granted. Pursuant to Code § 8.01-20, we retained jurisdiction as though his death had not occurred.

[3] Although the parties to the two proceedings were not identical, there is no contention that they were not parties in privity. We will assume, therefore, that this requisite of *res judicata* is satisfied.

[4] Brown does not state whether plaintiffs' alternative requests for reformation of the deed from the Browns to the Haleys or for a declaration of riparian rights are also barred by *res judicata*, but we construe his argument as extending to these aspects of plaintiffs' suit with equal force.

missibly have been joined, but, to a claim which, if tried separately, would constitute claim-splitting.

*Id.* at 670-71 n.4, 202 S.E.2d at 920-21 n.4 (citations omitted). The test to determine whether claims are part of a single cause of action is whether the same evidence is necessary to prove each claim. *See Bates,* 214 Va. at 672, 202 S.E.2d at 922; *Cohen* v. *Power,* 183 Va. 258, 261, 32 S.E.2d 64, 65 (1944); *Jones* v. *Morris Plan Bank,* 168 Va. 284, 290-91, 191 S.E. 608, 609-10 (1937). *Cf. Wright* v. *Castles,* 232 Va. 218, 223-24, 349 S.E.2d 125, 128-29 (1986); *Feldman* v. *Rucker,* 201 Va. 11, 18, 109 S.E.2d 379, 384 (1959).

Ejectment is an action at law to determine title and right of possession of real property. *See Providence* v. *United Va./Seaboard Nat.,* 219 Va. 735, 744, 251 S.E.2d 474, 479 (1979); *Benoit* v. *Baxter,* 196 Va. 360, 365, 83 S.E.2d 442, 445 (1954). It may be maintained by one who has an interest in and a right to recover possession of the premises, or a share, interest, or portion thereof. Code § 8.01-137. A verdict for the plaintiff must specify the share or interest of the plaintiff, whether in the whole or a part of the premises claimed, and the estate of the plaintiff, whether in fee, for life, or for a term of years. Code §§ 8.01-152, -153. The action is concerned only with the ownership rights of the plaintiff, and the proof necessary to support the action consists of the documents which vest title in the owner and any other evidence related to the issue of title.

An easement, on the other hand, is a privilege to use the land of another in a particular manner and for a particular purpose. It creates a burden on the servient tract and requires that the owner of that land refrain from interfering with the privilege conferred for the benefit of the dominant tract. *Bunn* v. *Offutt,* 216 Va. 681, 684, 222 S.E.2d 522, 525 (1976); *Tardy* v. *Creasy,* 81 Va. 553, 556 (1886). The privilege enjoyed under an easement is not inconsistent with "a general property" in the owner of the servient tract. *Bunn,* 216 Va. at 684, 222 S.E.2d at 525. Establishment and protection of an easement by injunction are equitable remedies. *See Mobley* v. *Saponi,* 215 Va. 643, 645, 212 S.E.2d 287, 289 (1975); *e.g., Robertson* v. *Robertson,* 214 Va. 76, 197 S.E.2d 183 (1973); *Cushman Corporation* v. *Barnes,* 204 Va. 245, 129 S.E.2d 633 (1963); *Williams* v. *Green,* 111 Va. 205, 63 S.E.2d 253 (1910). The proof necessary to justify equitable relief

includes evidence of the facts that give rise to the easement, whether by express grant or reservation, by implication, or by other means.

The existence of an easement is not relevant to the issue of title. In *King* v. *Norfolk & W. R. Co.*, 99 Va. 625, 631-32, 39 S.E. 701, 704 (1901), we held that a plaintiff with only a right to use the unemployed lands of the defendant could not maintain an ejectment action because his assertion of a right to use the land was not an assertion of title to any estate contemplated by the ejectment statutes.[5] Moreover, in *Reynolds* v. *Cook*, 83 Va. 817, 825, 3 S.E. 710, 714 (1887), we held that a defendant's right to enter, quarry, and remove limestone was not a proper defense to an ejectment action. Where such right was asserted, however, the verdict should have been for the plaintiff, confirming title in him subject to the defendant's right to enter and quarry. *Id.* at 825-26, 3 S.E. at 714-15. Finally, in *Bolling* v. *Mayor, &c.*, 24 Va. (3 Rand.) 563, 572-73 (1825) (predating the ejectment statutes), although the town of Petersburg held an easement for a highway over the land of the owner, the owner could nevertheless bring an action in ejectment to establish his title subject to the easement.

The easement which the Haleys assert in this case cannot be proved by the facts which proved in the ejectment action that the Browns were the owners of the disputed property. Plaintiffs assert a quasi-easement appurtenant to their land resulting from the express reservation in the flowage right and easement deed of the Browns to Apco, the Browns' use of the property subject to this reservation prior to their sale to the Haleys, and the "apparent, continuous, and reasonably necessary" character of this use of the property for access to the lake waters. The necessary proof of such an easement included the deed to Apco reserving a right to use the property for access to the water and evidence of the nature of the Browns' and Haleys' use of the property. None of this evidence was necessary to a determination of title in the ejectment action. The two claims — the Browns' action in ejectment and plaintiffs' claim of an easement — were not part of the same cause of action because there was no identity of facts necessary to prove each claim.

---

[5] *But see* dictum to the contrary in the earlier case of *Reynolds* v. *Cook*, 83 Va. 817, 820, 3 S.E. 710, 712 (1887).

Had the Haleys asserted and demonstrated an easement in the ejectment action, they could not have defeated the Browns' claim of ownership of the property. *Reynolds*, 83 Va. at 825-26, 3 S.E. at 714-15; *Bolling*, 24 Va. (3 Rand.) at 572-73. Nor could the court have granted the relief they now seek, as it is equitable in nature and the ejectment action was at law. *See Lagorio* v. *Dozier*, 91 Va. 492, 505-07, 22 S.E. 239, 240-41 (1895) (court was powerless in ejectment action to reform deed where party contended that, because of mutual mistake, it did not reflect the intent of the parties). The Haleys' recourse was to file a separate suit in equity, as they have done, to have an easement declared. *Cf. Stanardsville Vol. Fire Co.* v. *Berry*, 229 Va. 578, 584-85, 331 S.E.2d 466, 470 (1985) (defendant in trespass action at law could resort to equity for a determination of the existence of an easement over the property at issue). Indeed, the ejectment statutes expressly preserve a defendant's right to resort to equity for any relief to which he is entitled. *See* Code § 8.01-148. The Haleys and their privies, therefore, are not barred from bringing this suit in equity to establish their right to cross Brown's property to reach the lake waters and to enjoin Brown's interference with their use of this easement.[6]

Brown also contends, as he did below, that the Haleys are not entitled to cross his land below the 800-foot contour for access to the lake waters. He says the court erred in finding an implied easement from preexisting use, or quasi-easement, because certain elements necessary to a finding of such easement were lacking. We do not agree.

Absent express restrictions imposed by the terms of the grant, a grantor of property conveys everything that is necessary for the beneficial use and enjoyment of the property. *Middleton* v. *Johnston*, 221 Va. 797, 802, 273 S.E.2d 800, 803 (1981); *Fones* v. *Fagan*, 214 Va. 87, 90, 196 S.E.2d 916, 918 (1973); *Jennings* v. *Lineberry*, 180 Va. 44, 48, 21 S.E.2d 769, 771 (1942); *Scott* v. *Moore*, 98 Va. 668, 675, 37 S.E. 342, 344 (1900). From this principle is derived the concept of an implied easement from preexisting use. *Middleton*, 221 Va. at 802, 273 S.E.2d at 803; *Fones*,

---

[6] For the same reasons, they are not barred from bringing their claims for reformation of the deed from the Browns to the Haleys and for declaration of their riparian rights. Each of these forms of relief was equitable in nature and could not have been granted if sought in the ejectment action at law. Moreover, the proof necessary to sustain a claim based on each of these theories was not the same as that required in the ejectment action.

214 Va. at 90, 196 S.E.2d at 918; *Jennings*, 180 Va. at 48, 21 S.E.2d at 771. When a landowner conveys a portion of his land, he impliedly conveys an easement for any use that is continuous, apparent, reasonably necessary for the enjoyment of the property conveyed, and in existence at the time of the conveyance. *Haynie v. Brenner*, 216 Va. 722, 724, 222 S.E.2d 546, 548 (1976); *Fones*, 214 Va. at 90-91, 196 S.E.2d at 919; *Sanderlin v. Baxter*, 76 Va. 299, 305 (1882). *See generally* 1 R. Minor, The Law of Real Property §§ 97, 99 (F. Ribble 2d ed. 1928).

Brown contends that the land in question had not been put to a use that was continuous, apparent, necessary, and in existence at the time of the conveyance. Although there was some conflict in the testimony, the evidence of plaintiffs showed that when the Haleys were negotiating the purchase of the property, the Browns had already conveyed rights in the land below the 800-foot contour to Apco. The land had already been cleared by Apco for development of the lake, and the Browns were openly exercising their reserved right to use the land below the 800-foot level by grazing their cattle there. In 1964, the year the Haleys purchased their tract from the Browns, the Browns were using parts of their land between the 800-foot contour and the water for recreational purposes.

This evidence, together with the existence of a recorded reservation running with the land of the right to use the property to reach the lake for recreational purposes, was sufficient to support a finding that the use of the property below the 800-foot contour was continuous, apparent, and in existence at the time of the conveyance to the Haleys. Even if the character of the use changed — from grazing cattle to recreational use — this change does not preclude recognition of an easement where the use is reasonably necessary for the enjoyment of the property. *See Fones*, 214 Va. at 90, 196 S.E.2d at 918; *Keen v. Coal Company*, 203 Va. 175, 179, 122 S.E.2d 543, 547 (1961).

Brown asserts, however, that the use to which the Haleys have put the property below the 800-foot level does not meet the necessity requirement. For an easement to arise by implication from a preexisting use, the plaintiffs must prove by clear and convincing evidence that the use is a reasonable necessity, not an absolute physical necessity. *Middleton v. Johnston*, 221 Va. at 803, 273 S.E.2d at 803; *Fones*, 214 Va. at 90, 196 S.E.2d at 918; *Keen*, 203 Va. at 179, 122 S.E.2d at 546; *Jennings*, 180 Va. at 48, 21

S.E.2d at 771. The existence of reasonable necessity depends on the circumstances of each particular case. *Jones* v. *Beavers*, 221 Va. 214, 221, 269 S.E.2d 775, 779 (1980).

In this case, the Haleys met their burden. Their evidence, accepted by the trial court, shows that access to the water was within the contemplation of the parties in negotiating and entering into the contract for the sale of the property. When she first saw the property, Mrs. Haley discussed with Brown the soil and terrain and their suitability for development of a beach and boat landings. The Haleys' sole purpose in buying the tract was to acquire waterfront property for recreational use. Following their purchase, they developed the property for such use, building a beach, piers, docks, bathhouses, and other facilities related to water sports and recreation. The plaintiffs' evidence was that the property was virtually worthless to the Haleys and their tenants without access to the water.

Where the parties to a land transaction contemplate that the purchasers will have access to the water for recreational purposes and where such access adds materially to the value of the property conveyed, use of the property retained for access to the water is reasonably necessary for the beneficial use and enjoyment of the property conveyed.[7] *See Ulbricht* v. *Friedsam*, 159 Tex. 607, 618-20, 325 S.W.2d 669, 676-77 (1959). The court did not err in finding an implied easement across Brown's land for access to the water.

Worthy of special note is the case of *Ulbricht* v. *Friedsam*, in which the Supreme Court of Texas considered claims of parties in substantially the same positions as the parties in this case. There, the defendant's predecessor in title had granted an easement to a development company to overflow her land to the 1020-foot contour, reserving to herself the right of access to the water and the right to use the land to the water's edge. These reservations were expressly made to run with the land. Defendant later conveyed 386 acres, described by metes and bounds as extending to the 1020-foot contour line, to plaintiffs. Plaintiffs brought suit to try title to the land below the 1020-foot contour, to recover the right of ingress and egress to and from the waters of the lake, and to

---

[7] *Cf. Jones* v. *Beavers*, 221 Va. 214, 269 S.E.2d 775 (1980), where plaintiffs failed to meet their burden of showing an implied easement in a landing because they offered as evidence only the documents of conveyance — deeds and related plats — but no further proof of the circumstances surrounding their purchase of the property.

reform the deed by which the property was conveyed. 159 Tex. at 609-11, 617, 325 S.W.2d at 670-71, 675.

The court rejected plaintiffs' contentions that the 1020-foot contour was a meander line and not a boundary line or, alternatively, that the plaintiffs took title to the lake bed between the 1020-foot contour and the original bank of the river that formed the lake as a matter of law because the deed described the property as adjacent to the lake. The court ruled that the language of the deed was unambiguous and did not convey any land below the 1020-foot contour. *Id.* at 612-16, 325 S.W.2d at 672-74.

Turning to the question whether plaintiffs had an easement over the property below the 1020-foot contour, the court noted certain facts related to the use. Defendant had grazed cattle on the land prior to its sale to plaintiffs. During their negotiations, defendant represented to plaintiffs that the land fronted on the lake for 3-½ to 4 miles. Following the sale, plaintiffs subdivided 20 acres along the water's edge into lakefront lots, and the occupants of these lots used the lake for boating and fishing without complaint from defendant for some time. Moreover, other parts of the property fronting on the lake contained facilities built for recreational use of the lake, and this condition existed and was apparent at the time of the sale to plaintiffs. *Id.* at 616-17, 325 S.W.2d at 675. Citing the law of implied easement or quasi-easement, the Texas court held that the plaintiffs were entitled to recover as an easement the rights of defendant to use and enjoy the surface land below the 1020-foot contour line, limited to the extent that such use was reasonably necessary to the use and enjoyment of the land as lakefront property. *Id.* at 618-20, 325 S.W.2d at 676-77.[8]

█ Similarly, we hold that the Haleys have an implied easement, which runs with the land, to use the land of Brown below the 800-foot contour for access to the water for recreational use. Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*

---

[8] Two justices dissented from that portion of the opinion which denied ownership of the land below the 1020-foot contour. Construing Texas law, these justices would have held that plaintiffs owned the adjacent property below the 1020-foot contour to the bank of the river which formed the lake. 159 Tex. at 621-27, 325 S.W.2d at 678-82. The dissent did not address the easement issue.