# Staunton

## .J. H. Benoit and Margaret S. Benoit v. Lloyd Thomas Baxter and Others.

September 8, 1954.

Record No. 4233.

Present, Eggleston, Spratley, Buchanan and Smith, JJ.

The opinion states the case.

*Adams, Porter & Radigan*, for the appellants.

*Charles Pickett*, for the appellees.

SPRATLEY, J., delivered the opinion of the court.

Clifton P. Michael and his wife, Coral J. Michael, were the owners of Lots 500-A, 501-A and 502-A, as shown on a plat of a subdivision located in Falls Church, Virginia. On March 19, 1948, they entered into a contract, through their agent, J. H. Benoit, to sell to Lloyd T. and Elizabeth Q. Baxter a portion of Lot 502-A, bounded on the west by North Marshall Street, and lying to the north or rear of Lots 500-A and 501-A, which front on Lee Highway. There was then a house on Lot 502-A, which encroached on Lot 500-A a distance of about 1.17 feet, with a porch extending approximately 5 feet further thereon. The contract of sale contained the following agreement: "It is further agreed that the vendee will move the house not less than fifteen (15) feet north of its present location not later than six (6) months from date of this contract. The vendor agrees to grant an easement subject to the Fairfax County Regulations allowing the vendee to connect to present sewer and water line."

By deed dated April 20, 1948, the Michaels conveyed the land described in the above contract to Mr. and Mrs. Baxter, as per a plat attached thereto and made a part thereof. The deed made no reference to the contract of sale and contained no covenant by the grantees to move the house. However, the attached plat shows, within straight lines, the

"Present Location" of the house with its front portion standing partly on Lot 500-A, and, within dotted lines, its "Proposed Location" to be wholly on Lot 502-A, with its front turned to the west facing North Marshall Street.

On August 26, 1948, within six months from the date of the contract of March 19, 1948, the Michaels conveyed Lots 500-A and 501-A to Shirley F. Hiner. On May 29, 1950, J. H. Benoit and Margaret S. Benoit, his wife, acquired Lots 500-A and 501-A at a foreclosure sale, by virtue of the failure of Hiner and wife to satisfy a debt secured by a deed of trust upon their property.

During the period the Hiners owned Lots 500-A and 501-A, they made at least two written demands on the Baxters that the house be moved in compliance with the provision of the contract of March 19, 1948. After the Benoits acquired the property, they made several demands that the Baxters move the house off their property.

On April 28th, 1952, upon the continued refusal of the Baxters to move their house, Mr. and Mrs. Benoit filed this suit to compel its removal. They alleged in their bill that the encroachment interfered with and curtailed the full use and enjoyment of their property and constituted as well a cloud upon their title. They prayed specifically that an injunction be awarded requiring the Baxters to abate the trespass and encroachment on Lot 500-A, by the removal of the house in accordance with the contract of March 19, 1948, between the defendants and the Michaels.

Defendants demurred to the bill on the ground that complainants had a plain, adequate and complete remedy at law. The trial court overruled the demurrer, and thereupon defendants filed their answer admitting the encroachment, but denying they were under any legal duty to remove it. They averred that complainants were estopped to assert any claim against them because the contract of March 19, 1948, was not made for the benefit of the Benoits; and that complainants had a plain, adequate and complete remedy at law.

The case was heard *ore tenus* by the trial court. A de-

cree was entered sustaining the contentions of the defendants and dismissing the bill. From that decree complainants obtained this appeal.

Lloyd D. Baxter testified that he knew his house encroached on Lot 500-A, and admitted demands for its removal had been made upon him by the Hiners and the Benoits. He said that he had investigated the cost of moving the house; that he was advised, upon its removal, he would have to connect the sewer line serving the house with the main line on the street west of his property; and that he found the cost involved in the removal and new connection would amount to between $2500 and $3000. He added that he talked with Michael, his grantor, and was told by the latter that he need not move the house unless he wanted to; that Michael told him he had sold Lot 500-A, and he remarked to Michael at the time, "I wish I had known it. I would have bought the piece of property and had it straight." He admitted that when he accepted the deed for his property, he saw the plat attached and knew that his house encroached on Lot 500-A; that he raised some question about the matter, but that negotiations for the sale to him had gone so far that he accepted the deed.

Baxter said that he spent approximately $1500 to $1800 remodeling the house after its purchase and before he moved into it; that he intended then to move it; but did not do so because of the expense of connecting with a different sewer line.

Baxter said under cross-examination, "Yes. When I bought the house, it was my understanding it was to be moved. * * * I was supposed to get the vacant lot next to me, and move the house on that." He added that he had tried to buy Lot 500-A from the Hiners; but had never been able to come to an agreement with them.

Clinton P. Michael said he did not tell Baxter that the house did not have to be moved; that, in fact, he knew nothing about any effort to connect the house with another

sewer line; and did not remember ever discussing such matters with Baxter.

Benoit testified that he was familiar with the contract of March 19, 1948; that the encroachment on the lot materially interfered with and substantially curtailed the use of his property; that on the day he purchased Lots 500-A and 501-A, he told the Baxters he had acquired the property and expected them to move their house in accordance with that contract; that Baxter told him he was not able to do so at that time, but would as soon as he could; and that again in July, 1950, he asked Baxter when he intended to move the house and the latter replied that he did not know whether he would have to move it or not.

J. H. Benoit said that the house of the appellees was connected to the sewer and water lines running across his property to the main trunk lines on Lee Highway; that he had no objection to their continuance, subject to the regulations of Fairfax County.

Appellants claim that they were beneficial parties under the contract of March 19, 1948, within the contemplation of § 55-22 of the Code of Virginia, 1950*, because the lots of the parties were derived from a common source, that is, from the Michaels, the immediate predecessors in title of the appellees, and the predecessors in title once removed of the appellants. They further insist that, independent of statute, they are legally and equitably entitled to the full use and enjoyment of their lot, free from any trespass or encroachment.

We agree with the chancellor below that the contract between the Michaels and the Baxters was personal, and not

*§ 55-22. "An immediate estate or interest in or the benefit of a condition respecting any estate may be taken by a person under an instrument, although he be not a party thereto; and if a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise. * * * "

made for the benefit of anyone except the parties thereto. Complainants had no interest in Lot 5,00-A when the contract was entered into. They did not acquire that lot until two years thereafter. The contract was not made to run with the land, contained no recital that it should be binding upon the successors in title, or assigns of the Michaels, and nothing to show that it was made for the benefit of the Benoits. Its provisions did not follow the land when it was acquired by the Benoits, nor did the latter succeed to the rights of the Michaels thereunder.

Defendants contend that complainants had a plain, adequate and complete remedy at law by way of an action of ejectment or of unlawful detainer. They argue that complainants are seeking the aid of a court of equity to escape obligations which would be imposed upon them in a court of law.

Title or right of possession is always involved in an action of ejectment. *Davis* v. *Mayo*, 82 Va. 97; 6 M. J., Ejectment, § 2, page 499. Neither title nor right of possession is in question here. Legal title to the land in question is established by appellants' deed, and appellees admit an encroachment thereon both in their pleadings and evidence. A verdict in ejectment would specify the estate found in the Benoits, Virginia Code, 1950, § 8-823; but it would not abate the trespass or remove the encroachment.

The action of unlawful detainer is designed to protect the actual possession, whether rightful or wrongful. *Davis* v. *Mayo*, 82 Va. 97; *Gale* v. *Trust Co.*, 142 Va. 170, 171, 128 S. E. 643; 8. M. J., Forcible Entry and Detainer, § 2, page 530; Burks Pleadings and Practice, 4th Ed., Forcible or Unlawful Entry or Detainer, § 103, page 212.

By § 8-793, Code of Virginia, 1950, it is provided that a verdict or judgment for the plaintiff in such action shall be for the premises or such part thereof as may be found to be unlawfully held or detained by the defendant. That would not remove the encroachment on the land of the appellants.

The object of appellants' bill is to have the abatement of a

trespass by the removal of the encroachment, and thus permit them to have quiet possession of their land. This they could not obtain either in ejectment or unlawful detainer.

In *Steinman* v. *Vicars*, 99 Va. 595, 598, 39 S. E. 227, this is said:

"The jurisdiction of courts of equity to entertain suits to quiet possession and remove clouds from a title to real estate is firmly established in this State.

"Where irreparable injury is being done or threatened to be done to real estate by trespass, it is well settled that an injunction lies to restrain the trespass." 10 M. J., Injunctions, § 13, page 17, and cases cited.

In *Callaway* v. *Webster*, 98 Va. 790, 791, 37 S. E. 276, we said: "It is well settled that an applicant in possession of land with a clear title, or a *prima facie* title, is entitled to an injunction against a trespasser, threatening irreparable injury, or often repeated trespass."

Here the evidence shows that the removal of the encroachment is essential to the full enjoyment of Lot 500-A by the appellants. The substantive value of the land in the character in which it is enjoyed is otherwise imperiled.

■ Appellees assert that appellants are estopped by the conduct of their predecessors in title, in that they abandoned the terms of the contract of March 19, 1948, and acquiesced in the remodeling of appellees' house prior to the sale of Lot 500-A; and that the trial court properly took into consideration the hardship which would be imposed upon appellees by requiring removal of their building.

We are not impressed by either of these contentions.

Appellees had actual knowledge of the encroachment when they acquired their lot from the Michaels, both from the contract of purchase and from the plat attached to their deed. That they were fully aware of this is shown by their admissions and by their attempt to purchase Lot 500-A from the Hiners. No oral agreement with the Michaels to waive the terms of the March 19, 1948, contract affected the rights of any subsequent purchaser of Lot 500-A from the Michaels, even if such an agreement was made.

In *McMurray* v. *Dixon*, 105 Va. 605, 611, 54 S. E. 481, we said:

"* * * no mere parol agreement to establish a boundary and thus exclude from the operation of a deed land embraced therein can divest, change or affect the legal rights of the parties growing out of the deed itself."

"It is essential to the application of the principles of equitable estoppel, or estoppel *in pais*, that the party claiming to have been influenced by the conduct or declarations of another to his injury, was not only ignorant of the true state of facts, but had no convenient and available means of acquiring such information, and where the facts are known to both parties, and both had the same means of ascertaining the truth, there can be no estoppel." *Lindsay* v. *James*, 188 Va. 646, 659, 51 S. E. (2d) 326; *Lindsey* v. *Clark*, 193 Va. 522, 526, 69 S. E. (2d) 342.

The cost of moving appellees' house may be as much as $3,000, as claimed by them, and the corresponding benefit to appellants may not be anything like that amount in dollars and cents; but appellees knew that appellants, as owners of Lot 500-A, were entitled to the full use and enjoyment of their property.

We said in *Lindsay* v. *James*, *supra*, page 661:

"Relief by way of a mandatory injunction will not be denied merely because the loss caused will be disproportionate to the benefits accruing to the opposing party where it appears that the obstruction or the violation of a right was made with full knowledge and understanding of the consequences which result."

For the reasons stated, we are of opinion that the trial court should have granted a mandatory injunction requiring the defendants to remove, within a reasonable time, so much of their building as stands upon the land of the appellants, and this cause is remanded for such further proceedings as may be necessary and proper in accordance with the views herein expressed.

*Reversed and remanded.*