**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| LESTER RILEY and SUSAN K. RILEY, husband and wife, | No. 52687-5-II |
| Appellants, | |
| v. | |
| DAVID VALAER and SUSAN E. VALAER, husband and wife, | UNPUBLISHED OPINION |
| Defendants, | |
| and | |
| BLAINE HUNTER and MELISSA HUNTER, husband and wife; and BANK OF THE PACIFIC, | |
| Respondents. | |

GLASGOW, J.—Lester and Susan K. Riley owned two lots, one contained a home, an attached garage, and a patio (east lot), while the other lot was vacant (west lot). Part of the attached garage encroached on the otherwise vacant west lot. The encroachment has existed since before the Rileys owned both lots.

Blaine and Melissa Hunter ultimately purchased the east lot, and they knew at the time that their garage and patio encroached on the vacant west lot. The Rileys still owned the west lot.

The Rileys sued to force the Hunters to remove the encroachment. After a bench trial, the trial court ruled that it would be inequitable to order ejectment under the "liability rule," which allows a court to decline to require removal of an encroachment if certain factors are met. The trial

court quieted title to the area containing the encroachment in favor of the Hunters and ordered the Hunters to pay the Rileys for the strip of land.

The Rileys appeal, arguing that the Hunters cannot satisfy the elements of the liability rule because they knew of the encroachment when they bought the house, and the trial court's findings of fact did not support its conclusion of law that it would be inequitable to force the Hunters to remove the encroachment.

The Rileys do not dispute any of the trial court's enumerated findings of fact, so we treat them as verities on appeal, but some findings of fact embedded in the trial court's conclusions of law are disputed. These disputed findings are supported by substantial evidence. The trial court correctly applied the liability rule, and the findings of fact support the trial court's conclusion of law that it would be inequitable to force the Hunters to remove the encroachment by tearing down their garage and potentially undermining the structural integrity of their home. We affirm.

FACTS

The trial court's enumerated findings of fact are not in dispute. This case involves a strip of property that is approximately nine feet long and lies between two adjacent parcels. In early 1951, Fred and Alice Neth purchased the east lot, built a house, and made several improvements to the east lot that encroached several feet onto the adjacent west lot. Later in 1951 they purchased the west lot. In 1971, the Neths sold both lots to LaVern and Elaine Boespflug, who then sold both lots to Michael and Suzann Holman in 1975.

In 2000, the Rileys contracted with the Holmans to purchase both lots. Prior to the purchase, the Holmans notified the Rileys that the attached garage and patio of the home on the east lot encroached onto the west lot. The Rileys were not concerned about the encroachment

because they were purchasing both lots. In 2004, the Rileys obtained a loan from Argent Mortgage LLC secured by a deed of trust covering only the east lot. Argent did not inquire about the existence of any encroachments.

In 2007, the Rileys took steps to initiate a boundary line adjustment to have the house located entirely on the east lot, but never completed the adjustment. Also in 2007, the Rileys demolished the steps, pool house, and pool on the west lot, and rebuilt the area where the steps had been to blend with the preexisting retaining wall. The retaining wall, including the new part that the Rileys built, also encroached on the west lot.

The Rileys eventually defaulted on their loan, and David and Susan Valaer purchased the east lot at the subsequent foreclosure sale in 2010. The Valaers did not look up the property on Clark County's online property information center, nor did they inquire into the boundary lines, perform any survey, or contact the Rileys before completing the purchase. The Rileys remained owners of the vacant west lot.

In 2012, the Rileys sued the Valaers to remove the encroachment from the west lot. In the meantime, the Hunters entered into an agreement to lease and then purchase the east lot from the Valaers. The Hunters were aware of the encroachment and the pending lawsuit. The Hunters contacted the Rileys expressing an interest in either purchasing both lots or buying the east lot from the Valaers and resolving the encroachment issue with the Rileys. The Rileys never responded to this letter.

In 2013 the trial court granted partial summary judgment to the Valaers. On appeal, we reversed and remanded for the case to proceed to trial. *Riley v. Valaer*, No. 46120-0-II, slip op. at 11 (Wash. Ct App. July 7, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/

D2%2046120-0-II%20%Unpublished%20Opinion.pdf. Relevant to this appeal, we reasoned that genuine issues of material fact existed as to whether the Valaers acted with due diligence, or simply took a calculated risk or acted negligently "in locating the encroaching structure." *Id.* at 10.

In 2015, the Hunters again contacted the Rileys. They acknowledged the ongoing lawsuit, but nevertheless wanted to continue with the purchase of the east lot because the Valaers no longer wanted to lease it and a number of repairs needed to be made to the house. Melissa Hunter was facing serious medical issues requiring brain surgery, and the Hunters wanted stability for themselves and their young son. Lester Riley spoke to the Hunters and informed them that he was not willing to discuss the issue while litigation was ongoing.

In 2016, the Hunters purchased the east lot and entered into an indemnity agreement with the Valaers in which they acknowledged the existence of this encroachment lawsuit. The Rileys amended the complaint adding the Hunters as defendants. The Valaers were subsequently dismissed as a party.

The case proceeded to a bench trial, where the trial court heard testimony from Blaine Hunter and Lester Riley. Blaine Hunter testified that removal of the encroachment would come at great cost, it would undermine the structural integrity of the house, and the disputed strip of land containing the encroachment was essentially worthless on its own. Lester Riley testified that this ongoing litigation was preventing him from developing the west lot, but he did not explain how the encroachment itself was damaging the west lot, how he would benefit from its removal, or how much he thought the disputed strip was worth.

The trial court entered findings consistent with the facts described above. None of the trial court's enumerated findings of fact is challenged. The trial court concluded that the Hunters had

satisfied all the elements of the liability rule: (1) they did not simply take a calculated risk, act in bad faith or negligently, willfully, or indifferently locate the encroaching structure; (2) the damage the encroachment imposed on the Rileys' west lot was slight and the benefit of removal equally small; (3) there was ample remaining room for a structure suitable for the area in the vacant west lot and there was no real limitation on the property's future use; (4) it was impractical to move the encroaching structure as built; and (5) there would be an enormous disparity in the resulting hardships if removal were required.

The trial court also made several factual findings embedded in its conclusions of law, including that the Rileys were responsible for locating part of the encroachment, that there was no evidence that the encroachment prevented the vacant west lot from being short platted, that the encroachment had only a slight impact on the west lot, that there was no evidence that it was possible to remove the encroachment at a reasonable cost without undermining the structural integrity of the home, and that there was an enormous disparity in the hardships to the two parties.

The trial court quieted title to the disputed strip containing the encroachment in the Hunters. Because the disputed strip constituted about 8.18 percent of the total area of the west lot, the trial court ordered the Hunters to pay the Rileys 8.18 percent of the west lot's assessed value of $143,690.00, which amounted to $11,753.84.

The Rileys appeal, arguing that the trial court erred in its legal conclusion that the Hunters satisfied the liability rule's first element and that the trial court failed to make sufficient findings of fact to support its legal conclusions on the second, fourth, and fifth elements. They also challenge whether the record supports the trial court's factual findings embedded in its conclusions of law on the second, fourth, and fifth elements.

ANALYSIS

A.      Standard of Review

The Rileys do not challenge the trial court's enumerated findings of fact, only its conclusions of law. Therefore, the trial court's enumerated findings of fact appearing under its findings of fact heading are verities on appeal. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

We review the trial court's conclusions of law de novo, including whether they are supported by the findings of fact. *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 341, 308 P.3d 791 (2013). Where findings of fact are not challenged, we do not reweigh evidence that sufficiently supported the trial court's conclusions. *Meuller v. Wells*, 185 Wn.2d 1, 6, 367 P.3d 580 (2016). When considering whether the findings are sufficient to support the conclusions of law, we view reasonable inferences in the light most favorable to the party who prevailed at trial. *Scott's Excavating*, 176 Wn. App. at 342. We defer to the trial court on issues of conflicting evidence, witness credibility, and persuasiveness of the evidence. *Id.*

A finding of fact erroneously described as a conclusion of law is reviewed as a finding of fact. *Id*. To the extent the Rileys challenge factual findings mischaracterized as conclusions of law, we review the trial court's challenged findings for substantial evidence. *Casterline v. Roberts*, 168 Wn. App. 376, 381, 284 P.3d 743 (2012). Substantial evidence is evidence sufficient to persuade a rational, fair-minded person that a finding is true. *Id.* The party challenging a finding of fact on appeal bears the burden of showing that the record does not support it. *Scott's Excavating*, 176 Wn. App. at 342.

A trial court has broad discretionary authority to fashion equitable remedies, which we review for an abuse of discretion. *Emerick v. Cardiac Study Ctr., Inc.*, 189 Wn. App. 711, 730, 357 P.3d 696 (2015). We generally defer to a trial court's judgment in devising an equitable solution that balances the parties' interests. *Eichorn v. Lunn*, 63 Wn. App. 73, 80, 816 P.2d 1226 (1991).

B.      The Liability Rule

Generally, courts will order an encroacher to remove encroaching structures, even though removal is extraordinary relief. *Arnold v. Melani*, 75 Wn.2d 143, 152, 437 P.2d 908, 449 P.2d 880, 450 P.2d 815 (1968); *Proctor v. Huntington*, 169 Wn.2d 491, 496, 238 P.3d 1117 (2010). However, the liability rule provides an exception where ordering the removal of the structure would be oppressive. *Arnold*, 75 Wn.2d at 152; *Proctor*, 169 Wn.2d at 500.

Under this exception, an injunction to compel the removal of the encroachment can be withheld if

> (1) [t]he encroacher did not simply take a calculated risk, act in bad faith, or negligently, willfully, or indifferently locate the encroaching structure; (2) the damage to the landowner was slight and the benefit of removal equally small; (3) there was ample remaining room for a structure suitable for the area and no real limitation on the property's future use; (4) it is impractical to move the structure as built; and (5) there is an enormous disparity in the resulting hardships.

*Arnold*, 75 Wn.2d at 152; *Proctor*, 169 Wn.2d at 500 (quoting *Arnold*, 75 Wn.2d at 152). Each of these elements must be proved by clear and convincing evidence. *Garcia v. Henley*, 190 Wn.2d 539, 545, 415 P.3d 241 (2018).

If all the elements are satisfied, the trial court may adjust the boundary of the disputed property and require the encroaching party to compensate the other party for the land containing the encroachment. *Proctor*, 169 Wn.2d at 504. This remedy is grounded in the general power of

7

the trial court to afford equitable relief, as "a court's equity power transcends the mechanical application of property rules." *Id.* at 501. Because this rule requires payment in exchange for maintaining the encroachment, the rule is known as the liability rule. *Id.* at 496-501 (describing historical development and underpinnings of the liability rule).

In *Garcia,* the Washington Supreme Court emphasized that "a court-ordered conveyance of property from a rightful landowner to an encroacher is 'exceptional relief for the exceptional case.'" 190 Wn.2d at 545 (quoting *Arnold*, 75 Wn.2d at 152). However, *Garcia* also reiterated that due to the equitable nature of the test, "the question of whether each *Arnold* element has been met should be analyzed using the 'inherently flexible and fact-specific' equitable power of the court to fashion remedies that do equity." *Id.* at 543 (quoting *Proctor*, 169 Wn.2d at 503). Trial courts are afforded flexibility under the *Arnold* test, and "injunctions should not mechanically follow from any encroachment." *Proctor*, 169 Wn.2d at 502. "A court asked to eject an encroacher must instead reason through the *Arnold* elements as part of its duty to achieve fairness between the parties," because courts have "'tremendous discretion' to do justice when fashioning an equitable remedy." *Id.* at 502-03 (quoting *Young v. Young*, 164 Wn.2d 477, 488, 191 P.3d 1258 (2008)). The court's equity power is "inherently flexible and fact-specific." *Id.* at 503.

C.      Application of the Liability Rule in This Case

The trial court concluded that all five *Arnold* elements were met. The Rileys challenge the first, second, fourth, and fifth elements. To the extent that the Rileys challenge factual findings embedded in the trial court's conclusions of law, we conclude that they are supported by substantial evidence. Considering the unique facts of this case, we conclude that the liability rule warranted denial of an injunction mandating removal of the encroachment. We affirm.

8

1.      The first *Arnold* element

The Rileys contend that the Hunters took a calculated risk or acted with indifference because they knew of the encroachment and the pending litigation when they bought the east lot and agreed to indemnify the Valaers from the consequences of litigation, and this was sufficient to defeat the first *Arnold* element. We disagree.

i.      Law of the case

As an initial matter, the Rileys argue that we already determined in their initial appeal that the first element is not limited to the act of building the encroachment, and so under the law of the case, we are precluded from deciding otherwise in this appeal. Under the law of the case doctrine, we are bound by our holdings from a prior appeal in the same case, but may revisit those holdings if the prior decision was clearly erroneous and the erroneous decision works a manifest injustice to any party. *Morpho Detection, Inc. v. Dep't of Revenue*, 8 Wn. App. 2d 672, 682-83, 440 P.3d 1009 (2019).

In the prior appeal, we reversed the trial court's grant of summary judgment on the liability rule because "genuine issues of material fact exist[ed] as to this first element." *Riley*, No. 46120-0-II, slip op. at 10. We reasoned that the record at that time did not demonstrate whether the Valaers took "a calculated risk or act[ed] negligently in locating the encroaching structure." *Id.*

This holding was made before trial. At the time of our prior decision, the trial court had not yet made its factual findings on the *Arnold* elements. Thus, our prior decision reversing summary judgment does not constrain our analysis in this appeal where we are reviewing findings and conclusions entered after a trial. We reject the Rileys' law of the case argument.

      ii.    The Hunters were not the "encroacher" who located the encroachment within the meaning of *Arnold*

Turning to the merits, the first *Arnold* element requires that the "encroacher did not simply take a calculated risk, act in bad faith, or negligently, willfully or indifferently locate the encroaching structure." 75 Wn.2d at 152. The *Proctor* court explained that "[e]ncroachment occurs when one builds a structure on another's land." 169 Wn.2d at 496 (citing BLACK'S LAW DICTIONARY 607 (9th ed. 2009)). In *Proctor*, for example, the encroacher built a house, garage, and well on Proctor's property under the mistaken belief that the land was theirs. *Id.* at 494.

This understanding of "encroacher" is supported by the case law that formed the foundation of Washington's liability rule. The cases on which the Supreme Court relied in establishing the *Arnold* test, including the first element, all involved the establishment of a new encroachment by the party resisting ejectment, as opposed to a later owner who had purchased a preexisting structure and had not participated in building the encroachment. *See Hart v. City of Seattle*, 45 Wash. 300, 88 P. 205 (1907) (city's excavation and paving work damaging and decreasing plaintiff's property); *Peoples Sav. Bank v. Bufford*, 90 Wash. 204, 155 P. 1068 (1916) (house mistakenly constructed on the wrong lot); *Tyree v. Gosa*, 11 Wn.2d 572, 119 P.2d 926 (1941) (encroacher built two houses in a disputed area, with full knowledge that the property line was under dispute). Thus, the history of the liability rule supports our conclusion that the *Arnold* court's use of the term "encroacher" meant that the first element applies to parties who were responsible for setting or establishing the encroaching structure.

Furthermore, the first *Arnold* element must be read in its entire context. The term "encroacher" is informed by the *Arnold* court's later reference to "negligently, willfully, or indifferently *locate* the encroaching structure." 75 Wn.2d at 152 (emphasis added). The dictionary

defines "locate" in this sense as "to set or establish in a particular spot." WEBSTER'S NEW THIRD INTERNATIONAL DICTIONARY 1327 (2002). Read in its entirety, the first element applies to the party responsible for actively setting or establishing the encroachment.

This conclusion is also consistent with the subsequent cases applying *Arnold*, including those cited by the Rileys. In *Bach v. Sarich*, 74 Wn.2d 575, 445 P.2d 648 (1968), for example, the Supreme Court upheld the trial court's order enjoining a developer from building out over the surface of a lake and requiring the developer to remove a structure it had already built. The court reasoned, in part, that the developer had known all along that other lakefront property owners protested the development and would bring legal action if the developer continued with the project. *Id.* at 581-82. "The benefit of the doctrine of balancing the equities, or relative hardship, is reserved for the innocent defendant who proceeds without knowledge or warning that his structure encroaches upon another's property or property rights." *Id.* at 582.

*Bach* and the other cases that the Rileys cite all involved an encroacher who either actively continued or began the encroaching activity *after* learning that their right to do so was being challenged. *See Responsible Urban Growth Grp. v. City of Kent*, 123 Wn.2d 376, 389, 868 P.2d 861 (1994); *Foster v. Nehls*, 15 Wn. App. 749, 750, 551 P.2d 768 (1976); *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 700, 974 P.2d 836 (1999); *Mahon v. Haas*, 2 Wn. App. 560, 565, 468 P.2d 713 (1970). None of these cases involved a subsequent purchaser who did not participate in developing a preexisting encroachment. The Rileys do not identify a single Washington case where the encroacher had purchased a preexisting encroaching structure.

Instead, the Rileys cite to a 1954 Virginia case, *Benoit v. Baxter*, 196 Va. 360, 83 S.E.2d 442 (1954), to support their argument that it does not matter that the Hunters were not in any way

11

responsible for building or locating the encroaching structure. In that case, the original owners of three lots sold one lot containing a house that encroached onto one of the other lots to the Baxters. *Id.* at 361. The other two lots were eventually sold to the Benoits, who filed suit to compel the Baxters to move the house. *Id.* at 362.

The court held that the Benoits were entitled to ejectment because, under Virginia law, "'an applicant in possession of land . . . is entitled to an injunction against a trespasser,'" and the Baxters' encroachment impinged on the value and enjoyment of the Benoits' land. *Id.* at 366 (quoting *Callaway v. Webster*, 98 Va. 790, 791, 37 S.E. 276 (1900)). The court relied in part on the fact that the Baxters were aware of the encroachment when they purchased their lot. *Id.* It did not matter that the cost to the Baxters of moving their house was far higher than the corresponding benefit to the Benoits because, under Virginia law, "'[r]elief by way of a mandatory injunction will not be denied merely because the loss caused will be disproportionate to the benefits accruing by the opposing party where it appears that the obstruction or the violation of a right was made with full knowledge and understanding of the consequences which result.'" *Id.* at 367 (quoting *Lindsay v. James*, 188 Va. 646, 661, 51 S.E.2d 326 (1949)).

Though similar, Washington's liability rule imposes a different standard. The standard under our liability rule is not whether the party resisting ejectment had knowledge of the encroachment, but whether the encroacher took a calculated risk, acted in bad faith, or negligently, willfully, or indifferently located the encroachment. Nor did the rule in *Benoit* distinguish between the encroacher who built the encroachment and later owners. The Rileys also cite to a 1975 Utah case where an injunction ordering removal of an encroachment was upheld even though the encroaching party had not constructed anything, but that case likewise involved a different, albeit

12

similar, rule. *See Papanikolas Bros. Enters. v. Sugarhouse Shopping Ctr. Assocs.*, 535 P.2d 1256 (Utah 1975).

Under the facts of this case, the Hunters were not encroachers within the meaning of the first element because they did not build the encroachment, they merely purchased a lot that contained a preexisting structure. They only did so after making several overtures to resolve the encroachment issue only to be rebuffed by the Rileys.

Furthermore, the Hunters did not take a calculated risk or act in bad faith in buying the east lot because they were suffering uniquely difficult circumstances at the time. It is undisputed that Melissa Hunter was dealing with serious medical issues requiring brain surgery, incapacitating her, and making them unable to move out of their home with their young son. But the Valaers were no longer willing to rent the house to them and insisted on selling the house. Although the Hunters were aware of the encroachment when they bought the east lot, they acted in good faith by contacting the Rileys several times to resolve the encroachment issue before purchasing the property, without any constructive response. Given these unique facts, we hold that the Hunters satisfied the first element of the liability rule because they did not contribute to the construction of the encroachment, they acted in good faith in repeatedly attempting to resolve the issue with the Rileys, and their unique circumstances made them unable to move out of the home, a fact that the Rileys do not contest.

The Rileys contend that interpreting and applying the first element as we have done could insulate *any* future purchaser of property from ever having to remove an encroaching structure from a neighbor's land, regardless of the equities, even where they take a knowing, calculated risk that their neighbor will not assert their right of ejectment. This argument ignores the fact that any

future purchaser would still have to satisfy all of the other *Arnold* elements and show that the remaining equities favor them.

As the *Proctor* court explained, "The entire purpose of our pronouncement in *Arnold* was to show that injunctions should not mechanically follow from any encroachment." *Id.* at 502. Rather, the *Proctor* court "recognize[d] the evolution of property law in Washington away from rigid adherence to an injunction rule and toward a more reasoned, flexible approach." 169 Wn.2d at 504. We adhere to the reasoned, flexible approach contemplated by *Arnold* and *Proctor,* and we reject the Rileys' interpretation of the first element. We hold that the Hunters satisfied the first *Arnold* element.

 2. The second, fourth, and fifth elements

  i. The trial court adequately considered these elements by embedding its findings within its conclusions of law

The Rileys argue that the trial court's findings on these elements cannot support its conclusions of law because it did not enter formal findings of fact on the *Arnold* elements, though it did analyze the elements in its conclusions of law. Although the trial court could have been clearer in expressly and separately considering the facts relevant to each of the *Arnold* elements, we hold that it adequately addressed each element.

The Rileys cite to *Garcia*, which reaffirmed that trial courts must address each *Arnold* element when asked to eject an encroacher. 190 Wn.2d at 543. *Garcia* reversed a trial court's denial of an injunction to compel removal of the encroachment because the trial court failed to make findings of fact relating to each *Arnold* element. *Id.* at 545. This absence of findings by clear cogent and convincing evidence was "equivalent to a finding of their absence." *Id.*

But unlike in this case, the trial court in *Garcia* did not explicitly reference the *Arnold* elements in its ruling, instead noting that equitable principles may prevent ejectment in some cases, and *Garcia* was one of those cases. *Id.* at 543. Here, the trial court expressly referenced each of the *Arnold* elements in its conclusions of law and made related factual findings interspersed with its legal conclusions.

A finding of fact erroneously described as a conclusion of law is reviewed as a finding of fact. *Scott's Excavating*, 176 Wn. App. at 342. Under its conclusions of law heading, the trial court made several factual findings related to *Arnold* elements two, four, and five. The trial court stated that the Rileys themselves were responsible for locating part of the encroachment, that the encroachment had only a slight impact on the west lot, that removal of the structure would come at tremendous cost and would likely undermine the structural integrity of the home on the east lot, and that there was "an enormous disparity in the hardships to the two parties." Clerk's Papers at 246-47.

The Rileys contend that these are not findings of fact because they are conclusory statements. "Findings of fact are determinations of 'whether . . . evidence show[s] that something occurred or existed.'" *Casterline*, 168 Wn. App. at 382 (alterations in original) (quoting *Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.*, 21 Wn. App. 194, 197 n.5, 584 P.2d 968 (1978)). Although the trial court's findings on the *Arnold* elements do not identify or explain the evidence they are based on, they are clearly determinations of what occurred or existed. We therefore conclude that these findings adequately addressed the *Arnold* elements.

> ii. The trial court's findings on the second, fourth, and fifth elements are supported by substantial evidence

Because the Rileys seem to challenge whether the record adequately supports the factual findings embedded in the trial court's conclusions of law, we next determine whether those findings are supported by substantial evidence in the record. We hold that they are.

As the party resisting removal of the encroachment, it was the Hunters' burden at trial to prove by clear and convincing evidence that the damage to the Rileys as a result of the encroachment was slight and the benefit of removal equally small, it was impractical to move the encroaching structure as built, and there was an enormous disparity in the resulting hardships. *Arnold*, 75 Wn.2d at 152.

However, the Rileys bear the burden on appeal of showing that the record does not support the trial court's findings on these elements. *Scott's Excavating*, 176 Wn. App. at 342. We view reasonable inferences in the light most favorable to the Hunters as the prevailing party below, and we defer to the trial court on issues of conflicting evidence, witness credibility, and persuasiveness of the evidence. *Id*.

On the second element, the trial court found that the encroachment had only a slight impact on the west lot. The trial court heard testimony from Blaine Hunter, a professional real estate appraiser, that the strip of land containing the encroachment was not useful or worth anything on its own. But Blaine Hunter also acknowledged that it amounted to about eight percent of the entire lot.

Conversely, there was no testimony from the Rileys that the encroachment itself was damaging the property or the extent to which they would benefit from its removal. The vacant west lot was bare, overgrown, unused, and enclosed by a chain-link fence. Lester Riley testified that he

could not develop the west lot because of the ongoing litigation and the encroachment, but he did not explain how the encroachment itself was limiting his use of the vacant lot. Nor could he say whether he could still short plat the west lot, though he indicated his uncertainty was because he was not sure what the city's current infill standards required, an issue unrelated to the encroachment. In short, the Rileys have not pointed to anything in the record to suggest that the encroachment, apart from the legal dispute surrounding it, was in any way limiting their ability to develop the rest of the west lot or otherwise harming their use of it. And Lester Riley admitted that he had no opinion as to the value of the disputed strip or the amount, if any, of damages he had suffered as a result of the encroachment. The trial court's finding on the second element was therefore supported by substantial evidence.

On the fourth element, the trial court found that removal of the encroachment would come at tremendous cost and would likely undermine the home's structural integrity. Although there was no statement of the precise cost of removal, the trial court did hear testimony that the cost would be substantial and that it would entail destroying part of the contiguous roof, likely undermining the home's structural integrity. Blaine Hunter could not get a precise appraisal on the cost due to the nature of the concrete structures. A contractor would have to tear down significant portions of the structure in order to fully understand what would be required to remove the encroachment. The Rileys offered no evidence to contradict this testimony. Given Blaine Hunter's testimony on the infeasibility of removing the encroachment and the Rileys' lack of response, the trial court's finding on the fourth element was supported by substantial evidence.

This testimony, taken together, also supports the trial court's finding on the fifth element, that there is an enormous disparity in the resulting hardships. Removal of the encroachment would

involve destroying part of the contiguous roof of the Hunters' house, likely undermining its structural integrity, whereas there was no discernible impact to the west lot or hardship to the Rileys from leaving the encroachment in place. This finding is supported by substantial evidence.

The trial court found Blaine Hunter's testimony compelling and accordingly resolved these questions in favor of the Hunters. The trial court's findings on this front, embedded in its conclusions of law, support its legal conclusion that the Hunters satisfied the second, fourth, and fifth elements of the *Arnold* test by clear and convincing evidence.[1]

The Rileys also seem to argue that the trial court improperly relied in part on estoppel principles in its decision based on the fact that the Rileys did not inform Argent of the encroachment in their loan application. But it is clear from the trial court's order that it determined that the *Arnold* elements were met independent from what it may have concluded regarding the Rileys' conduct toward Argent. The trial court did not err in this regard.

CONCLUSION

We uphold the trial court's conclusion that the Hunters satisfied all of the *Arnold* elements and should not be ordered to remove the encroachment. It was within the trial court's discretion in equity to quiet title to the disputed strip in the Hunters and to order them to compensate the Rileys for the value of the strip at 8.18 percent of the west lot's assessed value. We affirm.

---

[1] Even if we were to view the trial court's disputed statements (that the encroachment had only a slight impact on the vacant west lot, removal of the encroachment would come at tremendous cost and would likely undermine the structural integrity of the home, and there was an enormous disparity in the resulting hardships) as application of the law to the facts, these statements are supported by the record and the facts recited in the trial court's decision.

No. 52687-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Maxa, C.J.

Melnick, J.