COURT OF APPEALS OF VIRGINIA

Present:   Judges Raphael, Lorish and Frucci
Argued by videoconference


JONATHAN E. ROOT, TRUSTEE OF THE
 ROOT LIVING TRUST, ET AL.

                                            MEMORANDUM OPINION* BY
v.      Record No. 1636-24-4                JUDGE LISA M. LORISH
                                            OCTOBER 21, 2025

FRANS J. KOK, ET AL.


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Douglas L. Fleming, Jr., Judge

Stephen C. Price (Theresa D. Small; Caitlyn M. Bender; McCandlish
& Lillard, P.C., on briefs), for appellants.

Nicholas V. Albu (The Albu Firm PLLC, on brief), for appellees.


An ejectment action determines the ownership of real property. The question here is

whether Code § 8.01-236's 15-year statute of limitations for ejectment applies to an action seeking a

declaration that a recorded easement, which gives a right of access over property, is void. Because

ejectment determines only ownership and possessory interests in tangible property, an ejectment

action would not clarify the validity of an access easement. The circuit court erred, therefore, in

applying the ejectment statute of limitations to this action.

                                    BACKGROUND

In early 1997, Frans J. Kok and Mary M. Shirley (collectively, Kok) owned three parcels of

land in Loudoun County described as Lots 1, 5A, and 5B. In April 1997, Kok executed and

recorded a Deed of Easement purporting to grant an easement across Lots 5A and 5B for the benefit

of Lot 1. A few months later, Kok executed and recorded a Deed of Conveyance, conveying Lots

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

5A and 5B to a third party. Eventually, after a series of transfers, Jonathan E. Root and Catherine C. Watkins, Trustees of the Root Living Trust, and Donald J. Owen and Amy E. Owen, Trustees of the Donald J. Owen and Amy E. Owen Living Trust (collectively, Root) purchased Lots 5A and 5B.

In 2024, more than 26 years after Kok recorded the Deed of Easement, Root filed a complaint for declaratory and injunctive relief. The complaint asked the circuit court to determine "whether or not Lots 5A and 5B are encumbered by the easement shown on the [Deed of Easement] plat to provide ingress and egress" to Lot 1A (formerly Lot 1).[1] The complaint alleged that: (a) under the merger doctrine, the Deed of Easement did not create an easement across Lots 5A and 5B benefiting Lot 1A; and (b) because no words manifested intent to grant an easement, neither did the Deed of Conveyance create an easement across Lots 5A and 5B. Root alleged that "Kok and Shirley have made an actual antagonistic assertion that they have a right to access their Lot 1A using the easement" and asked the court to declare that no valid easement existed and that Kok had no right to use any such "easement." Root also sought to enjoin Kok from such use.

Kok filed a plea in bar asserting that the 15-year statute of limitations in Code § 8.01-236[2] barred Root's claim because the easement had been recorded and Root's predecessors-in-interest acquired the land in question, more than 15 years before the suit was brought. Root responded by arguing that neither Code § 8.01-236—nor any other limitations period—applied to the action.

After an evidentiary hearing, the circuit court sustained the plea in bar with prejudice. Finding that Root's claim was, at its core, an ejectment action, the circuit court held that Root could not evade the ejectment statute of limitations by framing the complaint as a declaratory judgment

_____

[1] In 2007, a boundary line adjustment plat modified the boundaries of Lot 1 and redesignated the parcel as Lot 1A.

[2] Code § 8.01-236 provides: "No person shall make an entry on, or bring an action to recover, any land unless within fifteen years next after the time at which the right to make such entry or bring such action shall have first accrued to such person . . . ."

action. The circuit court ruled that Code § 8.01-236's 15-year statute of limitations barred the complaint "because the substance of the complaint [was] an adjudication of title or possession of real property subject to the interest of another." Root appeals.

ANALYSIS

Root argues that the circuit court was incorrect to apply the ejectment statute of limitations because Root was not seeking to remove Kok from possessing the property, but rather sought a declaration that the easement was void. A plea in bar "presents a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery." *Station #2, LLC v. Lynch*, 280 Va. 166, 175 (2010) (quoting *Hilton v. Martin*, 275 Va. 176, 179-80 (2008)). We review, de novo, a plea in bar based on the statute of limitations. *Robinson v. Nordquist*, 297 Va. 503, 513 (2019). We thus begin by assessing the applicable statute of limitations.

In a declaratory judgment action, the applicable "statute of limitations is governed by the object of the litigation and the substance of the complaint, not the form in which the litigation is filed." *Kappa Sigma Fraternity, Inc. v. Kappa Sigma Fraternity*, 266 Va. 455, 465 (2003). "If the law were otherwise, the statute of limitations could be rendered meaningless merely by the filing of a declaratory judgment action." *Id.* (quoting *Bd. of Supervisors v. Thompson Assocs.*, 240 Va. 133, 139 (1990)). For this reason, the circuit court was correct to assess the object of the litigation and its applicable statute of limitations, but incorrect to conclude that ejectment was the governing comparator. We start by reviewing the nature of an ejectment action. Then we explain why ejectment does not apply to the facts as pleaded. We conclude, however, by rejecting Root's suggestion that no statute of limitations applies to this action.

"Ejectment is an action to determine the title and right of possession to real property." *Sheffield v. Dep't of Highways & Transp.*, 240 Va. 332, 335 (1990); *see also Benoit v. Baxter*, 196 Va. 360, 365 (1954) ( "Title or right of possession is always involved in an action of

- 3 -

ejectment . . . .").  Black's Law Dictionary sums up the "essential allegations in an action for ejectment" this way: "(1) the plaintiff has title to the land, (2) the plaintiff has been wrongfully dispossessed or ousted, and (3) the plaintiff has suffered damages."  *Ejectment*, *Black's Law Dictionary* (11th ed. 2019).

Unlike a question of property ownership, the Supreme Court has explained that an easement is a "privilege to use the land of another" and that "[t]he existence of an easement is not relevant to the issue of title."  *Brown v. Haley*, 233 Va. 210, 216-17 (1987).  For this reason, a prior ejectment action which established only the fee simple ownership of land below a certain contour—denoting the boundary line between two properties—did not resolve whether there was an easement giving a right of access.  *Id.*  "Had the Haleys asserted and demonstrated an easement in the ejectment action, they could not have defeated the Browns' claim of ownership of the property" and the court could not "have granted the relief they now seek," which was to "have an easement declared."  *Id.* at 218.

We think *Brown* answers the question before us.  An ejectment action cannot resolve whether there is an easement allowing access over land owned by another.  But Kok urges us to find that *Brown* only prevents the easement *holder* from relying on ejectment to clarify the validity of an easement and that it does not prevent the property *owner* from bringing an ejectment action to reach the same end.  For support, Kok points to the fact that ejectment, as codified in Virginia, broadly extends to the existence of any "interest" in land, including the existence of easements.  Although Kok correctly observes that the phrase "any interest" appears in the ejectment statutes, this language existed since Virginia legislators first codified ejectment in 1849.  And, since then, our caselaw has consistently applied the historic understanding of what ejectment does, and does not, do.  The full context of the statute makes it clear that the phrase "any interest" means any whole or partial *possessory interest*.  An easement granting a right of

access, by contrast, is not a possessory interest, but a privilege. So whatever party brings an ejectment action, it can only resolve questions of ownership.

The history of ejectment and the action as codified in Virginia confirms our conclusion. Ejectment has deep common law roots. "The writ upon which the action of ejectment was founded was invented between the years 1327 and 1377 . . . when it was a mere action of trespass to enable a lessee to recover damages of the party who had ousted him of his possession." 1 Ransom H. Tyler, *A Treatise on the Remedy by Ejectment and the Law of Adverse Enjoyment in the United States* 34 (1870). How the writ evolved is not relevant to the question before us today,[3] but by the time the writ reached American soil, it allowed the rightful possessor of land to obtain possession of that land. "The object of the action is to obtain the possession of land, so that the remedy by ejectment is confined to cases in which the claimant has a possessory title, or a right of entry upon the lands." *Id.* at 36. Describing the "modern statutes and codes" that codified ejectment in the United States as of 1890, a commentator explained the action "lies to recover the possession of lands, with damages and costs for the wrongful withholding of them, and is the principal method in modern use for trying titles to

---

[3] One commentator observed that

> The evolution of the action of ejectment from its primitive form as a mere action of trespass, enabling a lessee of lands to recover damages when ousted of his possession, through a series of most ingenious fictions, which were afterwards added to enable him to recover possession as well, until its final establishment as the proper method of trying all disputed titles to real property, presents to the student of legal science one of the most interesting studies that the history of the law affords.

George W. Warvelle, *A Treatise on the Principles and Practice of the Action of Ejectment* § 4, at 4-5 (1905). "Few remedies have passed through so many changes of form, both in pleading and practice, and yet retained the same distinctive character that marked their origin." *Id.*

land." John D. Lawson, *Rights, Remedies, and Practice, at Law, in Equity, and under the Codes: A Treatise on American Law in Civil Causes; with a Digest of Illustrative Cases* 3707 (1890).

These same historic treatises drew a distinction between the legal remedy of ejectment and the equitable remedies that may apply. *See* Restatement (Third) of Torts § 945 (addressing relative value of ejectment as a legal remedy for recovering possession of land versus injunctive remedies); Restatement (Third) of Torts: Remedies § 58 (Am. L. Inst. Tentative Draft No. 3, 2024) (explaining that "[e]jectment, the legal remedy, was wholly unavailable if plaintiff was in undisturbed possession, and the equitable remedy became available instead"). It has also long been said that "ejectment is only maintainable for corporeal hereditaments." 1 Tyler, *supra*, at 37. In other words, ejectment was an action to deal with the ownership and possession of tangible things like land and fixtures.[4]

As a result, "[a]ny thing attached to the soil of which the sheriff can deliver possession" is something that could "be recovered in the [ejectment] action." *Id.* But things that were "incorporeal, [that] are in their nature invisible . . . [are] therefore not capable of being delivered" in ejectment. *Id.* Thus, ejectment has always been the action at law "to recover possession of land," in contrast to a "bill to remove cloud on title[,]" which was the "historic equitable remedy for a property owner who had not been dispossessed, but whose ownership or possession was threatened by another who claimed an interest in the land." Restatement (Third) of Torts: Remedies § 58.[5]

---

[4] The early common law adopted a distinction between corporeal (tangible) and incorporeal (intangible) property. *Corporeal*, *Garner's Dictionary of Legal Usage* (2011). A right of way, lacking material substance, was treated as incorporeal. *Id.*

[5] An action to remove a cloud on title in Virginia is brought under Code § 55.1-123. A leading treatise has noted that "[n]o Virginia case has been located that specifies the statute of limitations on quiet title actions" but "[t]he prime candidate must be the five-year period prescribed by Code § 8.01-243(B) for 'injuries to property.'" Kent Sinclair, 1 *Sinclair on Virginia Remedies* § 67-4 (2025).

Virginia first codified ejectment into statutory law in 1849.  Today, the rules governing ejectment actions can be found at Code §§ 8.01-131 to -165.  From 1849 to today, ejectment has always been about the possession of the land.  Thus, the 15-year statute of limitations for an ejectment action equals the time it takes to adversely possess land under Virginia law.  Code § 8.01-236.  "[T]he acquisition of title by adverse possession and the statute of limitations for ejectment are inextricably linked, because the period necessary to hold property for adverse possession is equal to the statute of limitations barring suits for recovery of real property." *Ferguson v. Stokes*, 287 Va. 446, 451 (2014).  For this reason, "a successful plea of the statute of limitations not only defeats an ejectment action, but also clears the way for title to be divested and conferred upon the adverse occupant." *Id.*  Based on these principles, our Supreme Court concluded that when a defendant pleaded the statute of limitations to defend against an ejectment suit, the defendant was "in effect" just "reasserting his adverse possession claim and seeking ownership" of the disputed property. *Id.*

The question here is whether there is any support for the idea that an action for ejectment can be effective not only to clear up questions of title, but also to determine the validity of a non-possessory interest like an easement.  As we noted to begin, the *Brown* case held otherwise.  233 Va. at 216.  And commentators have long agreed that an ejectment action "does not lie for a mere right of way" (that is to say, a privilege) because of the corporeal/incorporeal distinction.  1 Tyler, *supra*, at 41.  "[E]jectment only lies for something tangible, something of which possession may be delivered by the sheriff to the plaintiff." *Id.*

Virginia's ejectment statute has always allowed an ejectment action to proceed if the plaintiff has "a subsisting interest in the premises" and "claim[s] a right to recover the same, or to recover the possession thereof, or *some share, interest or portion thereof.*"  Code § 8.01-132 (emphasis added).  The defendant in such an action is a "person actually occupying the

premises" or "any person claiming title thereto or claiming any interest therein adversely to the plaintiff." Code § 8.01-133. If the defendant is not occupying the property in question, the action could proceed "against some person exercising ownership thereon or claiming title thereto or *some interest* therein at the commencement of the suit." Code § 8.01-133 (emphasis added).

The rest of the statute shows that "some interest" can be understood as only *some* possessory interest, as opposed to an entire, undivided possessory interest. "Some interest" does not expand the scope of ejectment to allow the litigation of any nonpossessory interest. This is made clear by the statute's requirement that a plaintiff bringing an ejectment action state if "he claims an undivided share or interest" in the property or by contrast if "he claims in fee or for his life, or the life of another, or for years, specifying such lives or the duration of such term." Code § 8.01-137. These other shares, or interests, are still possessory interests—just possessory interests that are less than ownership in fee simple. Moreover, the statute requires that the verdict form in an ejectment action state the jury's finding about whether the plaintiff has a "right to the possession of the premises, *or any part thereof.*" Code § 8.01-149 (emphasis added). This verdict form language juxtaposes the right to possess part of a property against the right to possess the *entire* property. Finally, the statute distinguishes the situation in which the "right of the plaintiff is proved to *all the premises claimed*" from when it is proved to "*only a part or share* of the premises." Code § 8.01-151 (emphases added). In short, nothing about the statutory scheme suggests that the phrase "some interest" expands the nature of ejectment beyond the ownership and possession of land or physical objects on the land. Instead, "some interest" refers to situations where some partial possessory interest is claimed.

More persuasive still, Virginia's ejectment statute has referenced "some interest" since 1849; yet, every subsequent case and treatise has affirmed that an ejectment action does not resolve questions about rights of way or easements. The Supreme Court first explained in 1860

- 8 -

that whether an easement exists is independent of the question of who owns land and that the existence of an easement cannot be resolved through an ejectment action. *Warwick & Barksdale v. Mayo*, 56 Va. 528, 548 (1860). There the Court observed that "no question as to the easement was *or could have been* raised in the ejectment," because regardless of who owned the soil, it "did not affect the public easement." *Id.* (emphasis added). Instead, the existence of a public easement should have been "presented either by an action of trespass" or "some proceeding to abate the alleged nuisance." *Id.* at 550.

Then the Supreme Court ruled that ejectment was improper to resolve whether someone had encroached on another's property. *Benoit*, 196 Va. at 365. Again affirming that ejectment deals only with title and the right of possession, the Court explained, "[a] verdict in ejectment would specify the estate found in the [landowner], . . . but it would not abate the trespass or remove the encroachment." *Id.* (citation omitted). Instead, the landowners were correct to seek to enjoin the alleged trespass to "permit them to have quiet possession of their land." *Id.* at 366. The Supreme Court observed, "[t]his they could not obtain either in ejectment or unlawful detainer." *Id.*

Kok nevertheless suggests that *Reynolds v. Cook*, 83 Va. 817 (1887), holds that an ejectment action can resolve the validity of a purported easement. But the Supreme Court explained in *Reynolds* that the right to enter another's land to collect natural resources is distinct from a mere privilege. 83 Va. at 820 (citing 1 Tyler, *supra*, at 42). Tyler's treatise affirmed that an ejectment "action does not lie for a mere right of way . . . [n]or can ejectment be brought for a mere easement in any case." 1 Tyler, *supra*, at 41. Instead, "ejectment only lies for something tangible, something of which possession may be delivered by the sheriff to the plaintiff." *Id.* But "ejectment lies for a coal mine" because "a coal mine comprehends the ground or soil itself, which may be delivered on the execution." *Id.* The Restatement of Property identifies the same

distinction at common law between an ordinary easement ("a nonpossessory right to enter and use land") and a *profit à prendre* ("an easement that confers the right to enter and remove timber, minerals, oil, gas, game, or other substances"). *See* Restatement (Third) of Prop.: Servitudes § 1.2 (Am. L. Inst. 2000). As a result, *Reynolds v. Cook* proves the rare exception, not the rule.[6]

In conclusion, we agree with Root that the trial court erred by treating ejectment as the underlying cause of action in Root's declaratory action. It is undisputed that Root possesses the entire property and owns the entire interest in the property. An ejectment action could only affirm the same. There is nothing the sheriff could physically deliver that would resolve whether Kok has a right of way over part of Root's property.[7]

Likewise, in pleading the statute of limitations here, Kok was not "reasserting his adverse possession claim and seeking ownership" of the disputed property. *Ferguson*, 287 Va. at 451. Instead, Root pleaded that Kok had asserted a right to cross Root's property using an easement that (according to Root) does not exist. In other words, Root appears to seek declaratory relief to prevent a trespass from taking place, or equitable relief to remove a cloud of title.

The fact that the statute of limitations for ejectment does not apply here does not, however, mean that Root's declaratory judgment action is temporally unbounded. The Supreme Court has repeatedly affirmed that statutes of limitation cannot be "rendered meaningless" through the declaratory judgment mechanism. *Kappa Sigma Fraternity*, 266 Va. at 465 (quoting

---

[6] Other jurisdictions have occasionally concluded that ejectment is appropriate where the use of an easement interferes with an owner's possessory interest, or where an easement holder exceeded the permission granted through the easement such that the easement holder effectively denies the owner's property rights. *See, e.g.*, *Moore v. Equitrans, L.P.*, 49 F. Supp. 3d 456 (N.D. W.Va. 2014); *Baur v. Chevron Chem. Co.*, 631 F. Supp. 1491 (E.D. Mo. 1986). Because Root pleaded no interference with his ownership or possessory interest in the property here, we do not address whether Virginia would likewise conclude that ejectment applies in such a circumstance.

[7] Compare Kok's purported easement with Tyler's coal mine. 1 Tyler, *supra*, at 41. Whereas "a coal mine comprehends the ground or soil itself, which may be delivered on the execution," an easement comprehends the *privilege* to cross that ground or soil. *Id.*

*Thompson Assocs.*, 240 Va. at 139). But what statute of limitations applies, and can we decide that for the first time on appeal?

Ordinarily, we will uphold a circuit court's decision using the "right result for the wrong reason doctrine," if the "trial court's decision is correct, but its reasoning is incorrect, and the record supports the correct reason." *Haynes v. Haggerty*, 291 Va. 301, 305 (2016). Root points out that, while Kok's plea in bar asserted the statute of limitations, Kok's sole argument was that it was the *ejectment* statute of limitations that applied. On the one hand, it is true that where an affirmative defense is involved, we cannot "sustain the result and assign the right ground" if it would "be necessary to recognize and uphold a different defense—a defense that is not before us on this appeal." *Eason v. Eason*, 204 Va. 347, 352 (1963). On the other hand, the Supreme Court has applied the right-result-different-reason doctrine in an analogous case. *See Haynes*, 291 Va. at 305 (affirming the lower court's decision to grant a plea in bar on the statute of limitations but based on different reasoning than the circuit court's).

Applying the principle that we should decide cases on the narrowest grounds, we assume (without deciding) that we could affirm the circuit court's determination that the statute of limitations bars the complaint here, but base our decision on a different statute of limitations than the one briefed and argued below (or on appeal). Even with that assumption, though, we run headfirst into another limitation on applying the right-result-different-reason doctrine: The doctrine does not apply if additional fact-finding is necessary. *Perry v. Commonwealth*, 280 Va. 572, 579 (2010) (explaining the doctrine applies only if "the development of additional facts is not necessary"). Assuming the complaint adequately sets forth a request for declaratory relief to prevent a trespass (or to remove a cloud on title), the court would need to determine when the appropriate cause of action accrued. This fact-finding is a matter for the trial court if the parties properly present additional statute of limitations arguments on remand.

CONCLUSION

For these reasons, we reverse and vacate the trial court's order granting the plea in bar on the statute of limitations for ejectment. We remand for further proceedings consistent with this opinion.

*Reversed, vacated, and remanded*.