# COURT OF APPEALS OF VIRGINIA

---

**Record No. 0073-25-1**

---

CITY OF NORFOLK
v.
PRETTY LAKE 5757 LLC

---

Present: Judges Causey, White and Frucci
Argued at Virginia Beach, Virginia

Opinion Issued April 21, 2026[*]

---

**FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK**
David W. Lannetti, Judge

Kristopher R. McClellan (Adam D. Melita; City Attorney's Office, on briefs), for appellant.

Stephen Heretick (Louis N. Joynes; Stephen E. Heretick, P.C.; Joynes & Gaidies, P.C., on brief), for appellee.

---

**MEMORANDUM OPINION BY**
**JUDGE STEVEN C. FRUCCI**

This case involves a land dispute between City of Norfolk (the "City") and Pretty Lake 5757 LLC ("Pretty Lake"). After Pretty Lake purchased in a tax sale a portion of land that the City had been utilizing as a public park, it sought a judicial declaration that it was entitled to exclusive ownership of the land and an injunction ordering the City to cease use, construction, and operation of the land and improvements on the land. As such, it brought forward claims of declaratory judgment, statutory ejectment, common law ejectment, and unlawful entry. The City, in turn, sought to quiet title of the land (claiming it had adversely possessed the land) and, if needed, to recover compensation for improvements to the land.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

Following a bench trial, the circuit court made several rulings and findings, including that the City had a right of way that could not exceed the scope of public transportation, that the City did not have an implied easement over a portion of the disputed land, that the statute of limitations had not ran for Pretty Lake's ejectment and unlawful entry claims, that the City had not specifically pled a statute of limitations defense for the ejectment claims, that the City did not adversely possess the land, and that the City was not entitled to compensation for the improvements made to the land, as it did not prove them with reasonable certainty. For the following reasons, this Court affirms the circuit court's judgment.

BACKGROUND

This case primarily involves a dispute over two parcels of land located in Norfolk, Virginia: the "Pretty Lake Avenue Parcel" and the "Snake Parcel." The Snake Parcel is a serpentine piece of real property that lies south of the Pretty Lake Parcel and north of Little Creek and includes a portion that runs from 19th Bay Street to 21st Bay Street. This case also involves the impact on the two parcels of a twenty-five-foot strip of land adjacent to Little Creek, known as the "Bragg Strip." The Bragg Strip is measured from the local high-water mark of Little Creek at high tide (the "High-Water Mark") and, pursuant to prior litigation, stretches along at least the coastline between 19th and 21st Bay Streets and is owned by the City. The Bragg Strip defines the southern edge of the Snake Parcel. The Bragg Strip was created by a source deed that was conveyed to S. Burnell Bragg in 1906.

On December 9, 2003, certain real property, including the Pretty Lake Parcel and the Snake Parcel (collectively, the "Property"), was conveyed to Clark Investments, LLC ("Clark") via Special Warranty Deed (the "2003 Deed"). The 2003 Deed indicates that the parcel is subject to a right of way owned by the City, referencing a "Pretty Lake Avenue" between 19th Bay Street and 30th Bay

Street (however, the portions of the street between 19th Bay Street and 21st Bay Street were never built, and therefore, it has been commonly referred to by the parties as a "paper street").

Since at least 1990, the City has to a certain degree maintained the Property as a public park. In 1992, the City constructed three gazebos on the Property. In 2008, the City constructed a large concrete "community pier" (the "Pier") along the shoreline between 20th Bay Street and 21st Bay Street and paved a walkway to allow public access to the Pier. The entrance of the Pier and part of the walkway are both located within the Pretty Lake Parcel. Following the construction of the Pier, the City built a kayak ramp and installed several cooking grills, trash cans, park benches, and signs (collectively, the "Other Improvements") on the Property.

In 2008, a dispute arose between Clark and the City regarding the location of the Pier and, more broadly, ownership of the Bragg Strip and its impact on the Snake Parcel. Later, Clark filed a quiet title action against the City regarding the Snake Parcel and the Bragg Strip. In 2009, the court entered an Order resolving the quiet title claim (the "2009 Judgment Order"). The 2009 Judgment Order held that Clark owned the Snake Parcel and that the City owned the Bragg Strip. The 2009 Judgment Order also stated that Clark's ownership of the Snake Parcel was subject to the rights of the City to the Bragg Strip and that the Bragg Strip is measured "from the high-water mark visible to the naked eye at high tide." This measurement causes the precise location of the Bragg Strip to be dynamic over time, moving seaward or landward with the then-existing high tide at Little Creek.

The City assessed real estate taxes against Clark on the Property. Eventually, Clark stopped paying the assessed taxes. In 2021, the City filed a suit to enforce the resulting tax lien by selling the Property. In April 2022, Pretty Lake purchased the Property from Clark via Specialty Warranty Deed (the "2022 Deed"). While the 2022 Deed indicated, among other things, that all appurtenances run with the Property, no evidence presented during the current litigation showed that Pretty Lake granted to the City an easement, license, or any other express permission to use or to

make any improvements to the Property. After Pretty Lake purchased the Property, the City began assessing related real estate taxes against Pretty Lake.

In November 2022, Pretty Lake filed a complaint against the City, bringing forward claims of declaratory judgment, statutory ejectment, common law ejectment, and unlawful entry. Pretty Lake sought a judicial declaration that it was entitled to exclusive ownership of the Property and an injunction ordering the City to cease use or operation of the Property, to not use or operate the gazebos, the Other Improvements, or any portion of the Pier that are located on either the Pretty Lake Parcel or the Snake Parcel, and to not construct any new improvements on the Property. In December 2023, the circuit court granted a demurrer by the City to Pretty Lake's declaratory judgment claim.

The City also filed counterclaims to quiet title and recover the value of improvements to the Property should the court rule that the City was not entitled to construct those improvements. Specifically, the City requested title via adverse possession to all portions of the Property, a declaration that the Bragg Strip is measured landward from "the high water mark visible to the naked eye at high tide," an implied easement over the Snake Parcel in order to access the Bragg Strip, and compensation for the value of the improvements if the circuit court found that the City had no rights to them. The City also specifically pleaded that Pretty Lake's unlawful entry claim was time barred. The City finally argued that Pretty Lake should not be permitted to bring both a common law claim and a statutory claim for ejectment claim and that, regardless, an ejectment claim could not be brought against the City for the taking of private property for public use.

Prior to trial, during the discovery phase of the litigation, Pretty Lake sent requests for admission to the City. In response to one of the requests, the City admitted that Pretty Lake owned the fee beneath the City's "right of way" and the "paper street." During trial, the City attempted to call two witnesses, Jacqueline Johnson and Charles Sims, Jr., to testify about the City's use of the

Snake Parcel as a public park.[1]  However, the City had not identified them prior to the deadline in the circuit court's pretrial order.  As such, the circuit court excluded the witnesses' testimonies.[2]

Following trial, the circuit court wrote a letter opinion listing its findings and made several rulings, including: (1) that the City's admission as to Pretty Lake's ownership "super[c]edes any alleged clerical error in the related deeds"; (2) that the City had not abandoned its right of way to the paper street for purposes of public transportation, but found that much of the current use was inconsistent with that limited purpose; (3) that the City did not acquire the property in dispute by adverse possession; (4) that Pretty Lake's actions in ejectment were cognizable and viable; (5) that the City failed to properly assert a statute of limitations defense to Pretty Lake's claims of ejectment and that the statute of limitations for the unlawful entry claim had not yet passed; (6) that Pretty Lake acquired the City's park-related improvements upon the Pretty Lake parcel; and (7) that the City failed to establish the depreciated value of those improvements at trial.  The City appeals.

ANALYSIS

I.  Ejectment

The City argues that the circuit court erred by allowing Pretty Lake to pursue an ejectment claim against the City for the taking of private property for a public use and for letting it bring separate counts for ejectment under both common law and Code § 8.01-131.  Whether a cause of action is available in a given context is a question of law reviewed de novo.  *See, e.g.*, *Mizenko v. Elec. Motor & Contracting Co.*, 244 Va. 152, 158 (1992).

_____

[1] The City had numerous other employees who testified about their actions on the property, including collecting trash, driving trucks throughout the park, and grounds maintenance.  Additionally, an assistant city engineer testified about costs of gazebos, grills, and benches, though she often was uncertain in her testimony about what type of grills were used or the current conditions of the improvements.

[2] In order to preserve the issue for appeal, the witnesses were permitted to have their testimony taken for the record.  The two testified about park-related activities they had witnessed during their employment with the City.

In order for a statute to preclude a common law claim, it must abrogate the common law and repeal expressly or by implication a common law claim for a statutory one. *Country Vintner, Inc. v. Louis Latour, Inc.*, 272 Va. 402, 412 (2006). Whether a statute abrogates the common law is resolved by familiar principles:

> The common law will not be considered as altered or changed by statute unless the legislative intent is plainly manifested. A statutory change in the common law is limited to that which is expressly stated or necessarily implied because the presumption is that no change was intended. When an enactment does not encompass the entire subject covered by the common law, it abrogates the common-law rule only to the extent that its terms are directly and irreconcilably opposed to the rule.

*Id.* (quoting *Couplin v. Payne*, 270 Va. 129, 136 (2005)).

Here, the Supreme Court of Virginia has expressly held that "[e]jectment is a common law action, although it is now controlled by statute" in *Sheffield v. Department of Highways & Transportation*, 240 Va. 332, 335 (1990). In deciding that case, the Supreme Court of Virginia highlighted that "the codification expressly provides that the common law action of ejectment 'is retained.'"[3] *Id.* With the principle that the common law action is retained, we turn towards the issue of whether Pretty Lake was permitted to bring forward an ejectment suit.

Article I, § 11 of the Constitution of Virginia forbids enactment of any law "whereby private property shall be taken or damaged for public uses, without just compensation." "The plain purpose of the constitutional provision is 'to guarantee to an owner just compensation both where his property is *taken* for public uses and where it is *damaged* for public uses, irrespective of whether there be negligence in the taking or the damage.'" *Sheffield*, 240 Va. at 334 (quoting *Heldt* v. *Elizabeth River Tunnel Dist.*, 196 Va. 477, 482 (1954)). "Moreover, the constitutional

---

[3] We note that, at oral arguments, the City acknowledged this statutory language and stated it was not claiming that the statute abrogated the common law cause of action but rather subsumed it.

provision is self-executing and the landowner may enforce the right to compensation in a common-law action." *Id.* at 334. "Ejectment is an action to determine the title and right of possession to real property," and it "is a common-law action, although it is now controlled by statute." *Id.* at 335.

Relying on *Sheffield*, 240 Va. at 332, the City asserts that Pretty Lake cannot sustain an ejectment action against the City. However, the Supreme Court of Virginia in *Sheffield* did not create a blanket prohibition on ejectment actions against a governmental entity when the claim is that the government has used or occupied land for public use. Rather, the Court in *Sheffield* repeatedly emphasized that it was limited to the facts before it, which included an ejectment action against the Virginia Department of Highways & Transportation (the "Department") alleging that the Department did not compensate the correct parties before taking their property and building a highway. *Id.* The *Sheffield* Court found ejectment to be an "inappropriate and unsuitable . . . vehicle to prosecute an inverse condemnation claim against the Commonwealth" in light of the fact it would allow landowners whose property had been taken without compensation to "eject the State from the highway and take possession of the roadway," causing circumstances in which "the public transportation system could be thrown into chaos and a continuous highway system would be jeopardized." *Id.* at 336. The *Sheffield* Court's acknowledgement that Article I, § 11 of the Constitution of Virginia is "self-executing," that "the landowner may enforce the right to compensation in a common-law action," and that "[e]jectment is a common-law action," limitation of its ruling based on the overall facts before it, and conclusion being controlled by the effect the ejectment would have on the public demonstrates that *Sheffield* stands for the proposition that, when considering whether ejectment of a governmental entity is an appropriate remedy, the court must consider the adverse effects ejectment would have on the public. *Id.* at 334–36.

With that in mind, the record supports the circuit court finding "that the instant case does not present the same potential for adverse effects to the public that supported the *Sheffield* decision." Permitting ejectment of the City from property that it uses as a public park, that all parties agree is scarcely used by the public, will not result in the same degree of adverse effects as shutting down a major highway. The City will still have access to its right of way to allow for public transportation and did not present evidence that there would otherwise be an adverse effect on the public. Therefore, the circuit court did not err in finding the ejectment claim against the City viable.[4]

II. Adverse Possession of the Snake Parcel

The City contends that the circuit court erred in finding that it had not acquired the Snake Parcel by adverse possession. "In determining the proper application of the law of adverse possession to the facts of this case, we review the [circuit] court's decision *de novo*." *Quatannens v. Tyrrell*, 268 Va. 360, 365 (2004). As the party claiming adverse possession, the City had the burden of proving, by clear and convincing evidence, that for fifteen years there was an "actual, hostile, exclusive, visible, and continuous possession, under a claim of right," of the Snake Parcel. *Grappo v. Blanks*, 241 Va. 58, 61-62 (1991). Possession is considered hostile if it is "under a claim of right and adverse to the right of the true owner." *Id.* at 62. Further, "permission negates hostile possession." *Quatannens*, 268 Va. at 372. Additionally, "possession [must have] been continuous during a period necessary to give title under the statute of limitations. A break in the possession restores the seisin of the true owner." *Tapscott v. Cobbs*, 52 Va. 172, 181 (1854).

---

[4] Currently, the City does not claim that ejectment would be barred by sovereign immunity. As such, this Court does not address the question of whether sovereign immunity would prevent such an ejectment action.

Here, the evidence at trial demonstrated that in 2006, Clark and the City engaged in discussions regarding permissive use of a portion of the Snake Parcel to support the proposed construction of the Pier. There was no evidence of Clark objecting to the City using the Snake Parcel as part of a park or that the City was not permitted to construct additional improvements, other than the Pier, on the Snake Parcel. Additionally, the 2009 Judgment Order resolved the dispute between Clark and the City regarding ownership of the Bragg Strip and parts of the Snake Parcel, thus resolving ownership of that property as of 2009. Lastly, the evidence at trial included that the City both continuously taxed the Property and took action to enforce its real estate tax lien through a judicial sale of the Property, which resulted in the Property being sold to Pretty Lake in order to pay the taxes assessed against Clark. Following, the City assessed real estate taxes, including on the Snake Parcel, against Pretty Lake, which Pretty Lake paid. As pointed out by the circuit court, in doing so, the City acknowledged ownership by Clark, and then subsequently Pretty Lake, of the Snake Parcel. *See Erskine's Ex'rs v. North*, 55 Va. 60, 66 (1857) (holding that by acknowledging the title of another, a possessor claiming adverse possession "negatives the idea of adverse possession" and stating that "[w]hen the possessor has acknowledged a title in the claimant, then the possession will not be deemed adverse"); *Walton v. Rosson*, 216 Va. 732, 735 (1976).

As such, the City failed to meet its burden in proving, by clear and convincing evidence, that it had hostile, exclusive, and continuous possession of the Snake Parcel. Therefore, the circuit court did not err in concluding it failed to prove the City adversely possessed the Snake Parcel.

III. Statute of Limitations

The City argues that the circuit court erred in finding that the City did not adequately plead the statute of limitations defense to the ejectment claims. However, under Code

§ 8.01-235, an "objection that an action is not commenced within the limitation period prescribed by law can only be raised as an affirmative defense specifically set forth in a responsive pleading." Here, the City did not allege as an affirmative defense that the statutory limitations period had run for the ejectment claims. Rather, it only alleged that the unlawful entry count was timed barred. In regard to the ejectment claims, it argued instead that the City had used its eminent domain powers to "take" the property at issue.[5] As such, it was not an error of the circuit court to conclude that the City did not plead a statute of limitations defense to the ejectment claims.[6]

## IV. The City's Admission

The City claims the circuit court erred in accepting its discovery admission that Pretty Lake owned the underlying fee of Pretty Lake Avenue, arguing that the circuit court should have looked beyond the admission to determine the grantor's intent of the deed conveyed to Pretty Lake. However, "[a]ny matter admitted under [Rule 4:11] is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Rule 4:11(b). Further, admissions under Rule 4:11 are binding for the purposes of the pending action and cannot be contradicted unless the court allows such a modification. Though the City now takes issue with

---

[5] Notably, on appeal, the City does not claim it was incorrect for the circuit court to conclude that it did not specifically plead a statute of limitations defense for the ejectment claims.

[6] The City also contends that the circuit court erred in finding that Pretty Lake's unlawful entry claim was not barred by the applicable statute of limitations. The statute of limitations for an unlawful entry is three years. Code § 8.01-236. The circuit court found that, since Pretty Lake was recognized as new owners, the statutory of limitations period had reset. As Pretty Lake took ownership in 2022 and brought forward this suit later in 2022, three years had not yet passed. However, even assuming without deciding that the circuit court erred in finding that the unlawful entry claim was not time barred, any error is harmless. The City does not argue that remedies and actions taken by the circuit court would not otherwise be permitted under the ejectment claim. As we find that the ejectment claim was permissible, any harm caused by the circuit court's ruling regarding the unlawful entry claim's statutory limitations period is, therefore, harmless.

the admission, it never sought to amend or withdraw the admission—in fact, it even declined the opportunity to do so at trial. As such, the City is not in a position now where it is permitted to take the inconsistent stance that it was not bound by its admission.

## V. The Use of the Right of Way and the Acquirement of Structures and Tangible Property on Pretty Lake Avenue

The City contends that the circuit court erred by limiting the use of its right of way, in "ruling that Pretty Lake acquired City structures and other items of tangible property located in Pretty Lake Avenue, and by denying the City compensation for the value of the improvements." As mixed questions of fact and law, the questions of law are reviewed de novo, while the circuit court's factual determinations are reviewed with deference unless plainly wrong or without evidentiary support. *See, e.g.*, *Tuttle v. Webb*, 284 Va. 319, 324 (2012).

"When a right of way is granted over land . . . and the instrument creating the easement does not limit the use to be made thereof, it may be used for any purpose to which the dominant estate may then, or in the future, reasonably be devoted." *Cushman Va. Corp. v. Barnes*, 204 Va. 245, 253 (1963). However, a right of way may not be used in any manner "different from that established at the time of its creation [or] which imposes an additional burden upon the servient estate." *Cushman*, 204 Va. at 253; *see Brown v. Tazewell Cnty.*, 226 Va. 125, 130 (1983) ("If the land was dedicated to a particular public use and accepted, the public authorities were confined to that use and those necessarily attendant upon it or incidental thereto."). Although an easement holder may only use a right of way for the particular purpose for which it was originally dedicated, a "new use" that "is in all respects of the same nature and character as the old, and difference is in degree only, and no additional burden is put upon the servient estate, then the new use is within the prescriptive use." *Va. Hot Springs v. Lowman*, 126 Va. 424, 430 (1919).

In the case at hand, in 1906, the City's right of way was dedicated and accepted for the purpose of public transportation connecting Pretty Lake Avenue. As such, the circuit court

found "that allowing the public to traverse along the Pretty Lake Parcel by, for example, bicycle or foot, is both consistent with the particular purpose for which the right of way was dedicated and puts no additional burden on Pretty Lake's fee interest in the Pretty Lake Parcel." The circuit court further found "that the construction of paved walkways within the Pretty Lake Parcel to facilitate transportation is consistent with the purpose for which the right of way was dedicated," but that "the construction and maintenance of the gazebos, trash cans, park benches, and grills located on the Pretty Lake Parcel [were] not consistent with the purpose for which the Right of Way was dedicated." Giving deference to the findings of fact that the latter was not of same nature and character of the purpose of public transportation, it cannot be said that the circuit errored in finding that those contested structures were outside of the scope of the right of way and imposed an additional burden upon the Pretty Lake Parcel.

As these gazebos' and the Other Improvements' construction and maintenance were not consistent with the purpose for which the right of way was dedicated, and the uncontested matter that Pretty Lake owned the Snake Parcel in fee simple, any of the Other Improvements located within the Snake, outside of that within the Bragg Strip owned by the City, was also conveyed to Pretty Lake upon Pretty Lake's purchase of the Property. While an ejected party may seek compensation for the improvements it made on the property at issue, it must "present sufficient evidence to permit an intelligent and probable estimate of the amount." *See Martin v. Moore*, 263 Va. 640, 651 (2002). Here, the City did not provide any witnesses who knew for certain the types of materials used for or the condition of the Other Improvements and who was able to give an accurate monetary estimation for them. Therefore, the circuit court did not err in finding that the City did not adequately prove a value for compensation for the value of the improvements.[7]

---

[7] While the City is correct that the assessment of damages could be postponed until after judgment was rendered, the circuit court was not required to do so, and the City does not provide any argument on how it was an abuse of the circuit court to deny its request.

VI. Snake Parcel: Implied Easement

The City claims that the circuit court erred in denying an implied easement on the Snake Parcel. Specifically, it contends that the circuit court incorrectly assumed its implied easement claim was one of necessity over the Snake Parcel in order to access the Bragg Strip, whereas it claims that it really argued that it had an easement by implication from preexisting use. We note that prior litigation settled that the Bragg Strip is owned by the City, that in the current case the circuit court also held that the Bragg Strip is measured landward (meaning the precise location of its boundary moves as the high-water mark changes over time), and that the layout of the Property, in addition to the uncontested holdings of the circuit court, prevent the Bragg Strip from being landlocked within the Property.

An easement is not an ownership interest in the servient tract but the "privilege to use the land of another in a particular manner and for a particular purpose." *Brown* v. *Haley*, 233 Va. 210, 216 (1987). "Easements are appurtenant to, and run with, the dominant tract if they benefit the owner in his use and enjoyment of that tract." *Russakoff v. Scruggs*, 241 Va. 135, 138 (1991). An easement can be created in a number of ways. "Easements may be created by express grant or reservation, by implication, by estoppel or by prescription." *Id.* (quoting *Bunn* v. *Offutt*, 216 Va. 681, 684 (1976)). "Within the category of easements created by implication, we have recognized easements created by necessity . . . and by pre-existing use (also referred to as quasi-easements)." *Id.*

> While one cannot have an easement on land he owns, if, before
> severance, one part of the land was used for the benefit of another
> part, a "quasi-easement" exists over the "quasi-servient" portion of

- 13 -

> the land.  That easement is conveyed by implication when the
> dominant tract is severed; the grantee of the dominant tract obtains
> an easement over the servient tract, based on the previous use.

*Id.* at 139.  Though

> the extent of the easement right is determined by the circumstances
> surrounding the conveyance which divides the single ownership,
> the existence of the easement is established on a showing that (1)
> the dominant and servient tracts originated from a common
> grantor, (2) the use was in existence at the time of the severance,
> and that (3) the use is apparent, continuous, and reasonably
> necessary for the enjoyment of the dominant tract.

*Id.*

Assuming without deciding that the City is correct that the circuit court incorrectly assumed its easement by implication claim was one of necessity instead of prior use,[8] the circuit court still did not make an error in finding no implied easement over the Snake Parcel.  Here, the City's argument is centered on the fluctuation of the land's boundary[9] and does not provide any argument or evidence of a use that existed at the time of the severance (rather even its claims of utilizing the land as a park came after the time of the severance).  Additionally, easements are not ownership interests and would not convey to the City the ability to go beyond a particular purpose and use that existed at the time of the severance.  As such, without an allegation of such a prior use or it being a necessity, the circuit court did not err in not finding an implied easement.

VII.  Exclusion of Witness Testimony

The City lastly argues that the circuit court erred in excluding the testimony of Jacqueline Johnson and Charles Sims.  Under Rule 4:12(b)(2), a circuit court may sanction a party for

---

[8] The City does not argue that the circuit court was incorrect in its determination that an easement by implication was not necessary.

[9] Notably, this argument would be addressed by the circuit court's interpretation in how to measure the 25-feet of land above the high-water mark allowing for a change with the boundary.

failing "to obey an order to provide or permit discovery." The circuit court may, for instance, prohibit a party "from introducing designated matters in evidence" or "strik[e] out pleadings or parts thereof." Rule 4:12(b)(2)(B)-(C). As it "exercises 'broad discretion' in determining the appropriate sanction," this Court reviews its decision for an abuse of discretion. *Walsh v. Bennett*, 260 Va. 171, 175 (2000) (quoting *Woodbury v. Courtney*, 239 Va. 651, 654 (1990)).

Here, the City admits that it did not identify the two witnesses prior to the discovery cutoff established by the circuit court's pretrial order. Still, it argues that, since Pretty Lake subpoenaed the witnesses, their testimony should have been permitted. However, "[n]othing in the language of th[e] Rule or our case law demands that a [circuit] court first determine whether a party's failure to obey an order has caused another party to suffer prejudice before it may impose a sanction." *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 355 (2011). Further, the parties agree that the disclosure of the two witnesses was after the discovery deadline and that their testimony was on facts "never genuinely" disputed. Pretty Lake also objected to the two witnesses testifying both prior to trial and when the two were later called to testify at trial. Additionally, the City provides no argument on how these two witnesses' testimonies were more than repetitive of the other evidence or how excluding them was more than harmless error. The circuit court's exclusion of the witnesses was well within reason of its discretion, and so we find no error.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.

*Affirmed.*

- 15 -